[No. 48432-0-I. Division One. February 4, 2002.]

HARRY HORAN, ET AL., *Respondents*, v. THE CITY OF FEDERAL WAY, *Appellant*.

---

*Stephen A. Smith, Todd L. Nunn*, and *Lior J. Strahilevitz* (of *Preston Gates & Ellis, L.L.P.*), for appellant.

*R. Drake Bozarth*, for respondents.

ELLINGTON, J. — The Scenic Vistas Act, chapter 47.42 RCW, requires a local municipality to pay compensation before it can require removal of commercial signs near highways. The City of Federal Way therefore cannot order Harry Horan and David Rhodes to remove their signs when compensation has not been determined. We affirm.

## FACTS

Chapter 47.42 RCW, the Scenic Vistas Act, applies to signs adjacent to state highways,[1] and provides that "[j]ust compensation shall be paid upon the removal of any existing sign pursuant to the provisions of any resolution or ordinance of any county, city, or town."[2] In 1990, the City of

---

[1] *See* RCW 47.42.010.

[2] RCW 47.42.107(1).

Federal Way enacted uniform requirements for the appearance, size, and placement of all commercial signs and billboards in the city. The ordinance provided a five-year "amortization" period for nonconforming signs. The ordinance further provided that its requirements did not apply if removal "would require the City to pay compensation under RCW Chapter 47.42."[3] In 1995, Federal Way extended the amortization period for an additional five years, and provided that "[t]he City may elect not to apply any provisions of this Section 22-335 if the removal of a sign would require the city to pay compensation under any federal, state or other law, including RCW ch. 47.42."[4]

Harry Horan and David Rhodes own commercial signs in Federal Way situated adjacent to a state highway. In 1996, Horan and Rhodes received notices from Federal Way that their signs did not conform to the ordinance and must be removed by 2000. The notices made no mention of compensation.

In July of 2000, Federal Way issued notices of violation ordering Horan and Rhodes to bring their signs into compliance or remove them.[5] Horan and Rhodes challenged the orders on grounds that chapter 47.42 RCW requires Federal Way to pay compensation for the signs. The hearing examiner upheld the removal orders, and Horan and Rhodes filed a LUPA (Land Use Petition Act) petition. The superior court reversed the hearing examiner, holding that Federal Way was required to pay compensation under chapter 47.42 RCW.

---

[3] City of Federal Way Ordinance No. 90-43 ex. A, ch. 165.35 § 5(e) (1990); Clerk's Papers at 139.

[4] City of Federal Way Ordinance No. 95-235 § 3 (1995) (amending Article IV of the Federal Way City Code 22-335(I)); Clerk's Papers at 152.

[5] These notices of violation and orders directing compliance are not in the record. However, it appears from the hearing examiner's decisions and the parties' briefs that compliance was required within about 14 days.

## DISCUSSION

We must first decide whether, as the City argues, Horan and Rhodes' LUPA challenge is untimely under *Wenatchee Sportsmen Ass'n v. Chelan County.*[6] In that case, Chelan County enacted a site-specific rezone, allowing urban growth outside its interim urban growth area. Nearly two years later, the County approved a plat application for development in the rezone. The Wenatchee Sportsmen Association argued the development project violated the Growth Management Act, chapter 36.70A RCW. The Supreme Court held that because the site-specific rezone was a project permit under RCW 36.70B.020(4), it was a "land use decision" subject to a LUPA challenge.[7] The challenge brought after approval of the development plan was therefore really an untimely challenge to the rezone itself, and was precluded by the LUPA statute of limitation.[8]

Federal Way contends Horan and Rhodes' LUPA challenge to the removal orders is similarly untimely. Under LUPA, an aggrieved party has 21 days to file a petition challenging a land use decision.[9] Federal Way contends this limitation period was triggered by (1) enactment of the amended ordinance in 1995; (2) various communications from the City; (3) notices sent in 1995 and 1996 informing Horan and Rhodes that "the Amended Ordinance required them to remove their nonconforming signs by the year 2000,"[10] and/or (4) the extensive media coverage of the 1995 amortization period extension. We reject the City's arguments.

First, Federal Way enacted the amended ordinance on June 6, 1995, before LUPA's July 23, 1995 effective date,

---

[6] 141 Wn.2d 169, 4 P.3d 123 (2000).

[7] *Wenatchee Sportsmen,* 141 Wn.2d at 181 n.2.

[8] *Wenatchee Sportsmen,* 141 Wn.2d at 181-82.

[9] RCW 36.70C.040(3).

[10] *Appellant's Opening Br.* at 12.

so the LUPA 21-day limitation period does not apply.[11] Second, LUPA's deadline is triggered only by a "land use decision,"[12] which is a "final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination."[13] Federal Way contends the final determination is the enactment of its sign ordinance (or, at the latest, the 1996 notices).[14] But Federal Way ignores the fact that the 1995 ordinance gave the City discretion regarding enforcement—in other words, Federal Way could choose whether or not to enforce the ordinance if it would owe compensation under the Scenic Vistas Act. The enactment of the ordinance therefore was not a final determination.

As for the 1996 notices, they constituted at most a final determination that Federal Way intended to enforce the ordinance, not that it would do so without paying compensation required by the statute. The challenge here is not to the ordinance nor to Federal Way's right to set size limits. Respondents challenge only the City's attempt to avoid payment of the compensation due under the statute, which did not occur until the removal notice in 2000. Neither the 1996 notices nor the enactment of the ordinance were land use decisions subject to LUPA review. The LUPA statute of limitation does not preclude the Respondents' claims.

Federal Way's argument that the enactment of the ordinance triggered the LUPA limitation period under *Wenatchee Sportsmen* also fails because there is no conflict between the statute and the ordinance. The ordinance allows Federal Way to order removal of noncomplying signs after a 10-year amortization period:

---

[11] Before the Legislature enacted LUPA, an aggrieved party in a land use proceeding could appeal the decision through a writ of review. The limitation period for most challenges to land use decisions was 30 days. *Brutsche v. City of Kent*, 78 Wn. App. 370, 380, 898 P.2d 319 (1995). These limitation periods were triggered by "the municipality's or agency's final decision." *Brutsche*, 78 Wn. App. at 380.

[12] RCW 36.70C.040.

[13] RCW 36.70C.020(1).

[14] Federal Way does not explain how communications or media coverage can constitute a final determination under LUPA.

Amortization. All legal nonconforming signs shall be discontinued and removed or made conforming within ten (10) years from the effective date of this code, on or before February 28, 2000, and all signs which are made nonconforming by a subsequent amendment to this code shall be discontinued and removed or made conforming within five (5) years after the date of such amendment (collectively the "Amortization Period"). Upon the expiration of the Amortization Period, the sign shall be brought into conformance with this code, with a permit obtained, or be removed.[15]

Nothing in the ordinance states that amortization is the sole method of compensation for sign removal,[16] or that Federal Way can order sign removal before paying compensation as required by chapter 47.42 RCW. Indeed, the ordinance contemplates compliance with chapter 47.42 RCW ("The City may elect not to apply any provisions of this Section 22-335 if the removal of a sign would require the city to pay compensation under . . . RCW ch. 47.42.").[17] Horan and Rhodes therefore had no reason to challenge the ordinance when it was enacted. Nor did they have reason to challenge the 1996 notices, since nothing in those notices stated Federal Way intended to withhold compensation. Only the July 2000 removal order revealed that intent. Respondents' challenge to the removal order was timely.

■ Section 107 of the Scenic Vistas Act, chapter 47.42 RCW, governs compensation for signs removed under local

---

[15] City of Federal Way Ordinance No. 95-235 § 3 (amending Article IV of the Federal Way City Code 22-335(E)) (1995); Clerk's Papers at 149.

[16] Federal Way argues the following legislative finding demonstrates the city council intended for amortization to be the sole method of compensation:

A ten (10) year amortization period for the removal of billboards and other non-conforming signs . . . is sufficient to ease the economic impact of such removal on businesspersons with substantial investment in signs in existence on the date of the adoption of this code and will allow such signs to be amortized in their value.

City of Federal Way Ordinance No. 95-235 § 1(7) (1995); Clerk's Papers at 146. Federal Way reads too much into the finding. It simply states that amortization is sufficient *to ease* the impact of removal, not that amortization is deemed sufficient to completely offset the impact of removal.

[17] City of Federal Way Ordinance No. 95-235 § 3 (1995) (amending Article IV of the Federal Way City Code 22-335(I)); Clerk's Papers at 152.

authority, including those removed pursuant to city ordinances.[18] Compensation under this provision is to be paid in the same manner as compensation for signs removed under state authority.[19] RCW 47.42.103 specifies this procedure:

> (1) Compensation as required by RCW 47.42.102 shall be paid to the person or persons entitled thereto for the removal of such signs. If no agreement is reached on the amount of compensation to be paid, the department may institute an action by summons and complaint in the superior court for the county in which the sign is located to obtain a determination of the compensation to be paid. . . .
>
> (2) If compensation is determined by judicial proceedings, the sum so determined shall be paid into the registry of the court to be disbursed upon removal of the sign by its owner or by the owner of the real property on which the sign is located. If the amount of compensation is agreed upon, the department may pay the agreed sum into escrow to be released upon the removal of the sign by its owner or the owner of the real property on which the sign is located.

Here, there is no agreement about compensation, there has been no judicial determination of compensation, and no payment into the court registry. Consequently, there is no way to disburse funds upon removal as required by the statute.[20] The removal order therefore cannot be enforced

---

[18] RCW 47.42.107(1).

[19] RCW 47.42.107(2). RCW 47.42.102 governs compensation for signs removed under state authority:

(1) Except as otherwise provided in subsection (3) of this section, just compensation shall be paid upon the removal of any sign (pursuant to the provisions of chapter 47.42 RCW), lawfully erected under state law, which is visible from the main traveled way of the interstate system or the primary system.

(2) Such compensation shall be paid for the following:

(a) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and

(b) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon.

[20] The parties have not adequately briefed whether amortization is sufficient compensation, and we express no opinion on the issue.

212

until these procedures are followed. As the hearing examiner concluded, Horan's and Rhodes' signs violated the Federal Way sign ordinance.[21] But as the superior court held, chapter 47.42 RCW precludes removal before compensation is determined.[22]

The superior court's reversal and remand are affirmed.

KENNEDY and APPELWICK, JJ., concur.

Review denied at 147 Wn.2d 1005 (2002).

---

[21] Horan and Rhodes did not contend otherwise. They had the burden to prove by a preponderance of the evidence that their signs complied with the ordinance. Federal Way City Code 1-19(D)(5). The hearing examiner found that Horan and Rhodes presented no such evidence, that they never argued their signs were in compliance, but rather relied simply on their challenge to the ordinance. These unchallenged findings are verities on appeal. *Stuewe v. Dep't of Revenue*, 98 Wn. App. 947, 950, 991 P.2d 634, *review denied*, 141 Wn.2d 1015 (2000).

[22] Horan and Rhodes are not entitled to attorney fees. *See Schofield v. Spokane County*, 96 Wn. App. 581, 590, 980 P.2d 277 (1999).