Johanson, J.
¶1 The city of Puyallup (City) appeals from a superior court order declaring its Ordinance 3067 (Ordinance) invalid under the Land Use Petition Act (LUPA), chapter 36.70C RCW. Schnitzer West LLC filed a LUPA petition challenging the Ordinance in superior court, claiming that the Ordinance was an invalid land use decision. The City argues that the superior court lacked subject matter jurisdiction because the Ordinance is a legislative action, not a land use decision subject to LUPA review.
¶2 We hold that the Ordinance was not a “site-specific” land use decision because it did not result from an application by a specific party, and therefore the superior court lacked subject matter jurisdiction under LUPA. Accordingly, we reverse the superior court order declaring the Ordinance invalid and dismiss Schnitzer’s LUPA petition.
FACTS
I. Background
¶3 This case involves a series of decisions by the Puyallup City Council concerning an area where Schnitzer *436 had purchased commercial property and sought to develop that property (Schnitzer Property).[1] In 2009, the City formally adopted an amendment to its comprehensive plan that created the “Shaw-East Pioneer Overlay Zone” (SPO).[2] The Shaw Road/East Pioneer Avenue area is considered a symbolic “ ‘gateway’ ” to the City. Clerk’s Papers (CP) at 205. The City wanted to create additional performance standards to supplement the existing zoning standards to encourage quality development in that area while allowing flexibility and creativity; create a walkable, safe, and pedestrian-friendly community; and use low-impact development principles. An “overlay zone” such as the SPO establishes additional development criteria to supplement the base zoning standards already in existence in a given area or per underlying zoning district. CP at 103.
¶4 The SPO was codified in chapter 20.46 of the Puyallup Municipal Code (PMC). At the time of its adoption, the SPO did not apply to Schnitzer’s property because the City had yet to annex it. The City, however, intended to expand the SPO into commercially zoned parcels within the area after it was annexed. Chapter 20.46 PMC imposes various regulations that are intended to promote creative, flexible, and quality development; ensure safe and pedestrian-oriented streetscapes; and encourage the use of low-impact development within the SPO. Annexation of the Schnitzer Property occurred in 2012, but the City did not extend the SPO into the area at that time.
¶5 In 2013, following its purchase of the Schnitzer Property within the newly annexed area, Schnitzer requested— and the City approved—an amendment to the then-existing zoning designation to convert a portion of its property from “Business Park” to “Limited Manufacturing” (ML) zoning to *437 allow this portion to be zoned consistently with an adjacent part. CP at 319. Schnitzer’s development plans included a 470,000-square-foot warehouse. The City approved Schnit-zer’s rezone request, finding that if it did not do so, an industrial development on the property would not be economically viable. Following this action, Schnitzer owned a total of three parcels in the annexation area, each with the ML zoning designation. Presumably, its development proposal was viable under this arrangement.
¶6 In January 2014, following the election of two new city council members, the City held a hearing to discuss whether or not it should impose an emergency development moratorium on all parcels within the recently annexed area, including the Schnitzer Property.[3] The stated purpose of the moratorium was to provide the City with sufficient time to consider whether to extend the SPO into all zones within the annexation area. But in Schnitzer’s view, the City had ulterior motives. Schnitzer believed that in reality, the proposed moratorium was a retaliatory measure designed to frustrate its development proposal.
¶7 After a second hearing, the City enacted an ordinance imposing the moratorium on all parcels within the annexation area for a 120-day period. In April 2014, the planning commission reviewed the potential SPO expansion and it determined that there was no basis to extend the SPO into any portion of the annexation area, including the Schnitzer Property. The following month, after its review of the planning commission’s recommendations, the City discussed the possibility of extending the SPO to only the Schnitzer Property—those parcels zoned ML.
*438 ¶8 The City indicated that it would not consider applying the SPO as it had previously been written and applied to commercially zoned properties, but it considered the possibility of either extending an amended version of the SPO to the Schnitzer Property or not extending the SPO to its property at all. In furtherance of the former option, the City prepared draft code text amendments to chapter 20.46 PMC, noting that a corresponding zoning map amendment would accompany any modified SPO if applied to the ML zone. The City recognized that although the plan it contemplated would involve differing and generally stricter design standards such as “consistent landscaped perimeter treatment and a maximum building size,” the overall type and scope of allowable uses in the proposed scenario would be “fairly similar.”[4] CP at 160. According to the City, this new option for extending the SPO would not fundamentally change the projected range of land uses permissible under the existing zoning regulations.
¶9 The City drafted the Ordinance to reflect its intent to expand this amended SPO into Schnitzer’s ML-zoned property. The SPO extension was a divisive issue in the City. From the first proposal of the Ordinance to its enactment, there was both considerable support and opposition. Proponents of the Ordinance were concerned about the importance of the area and the need for careful and thoughtful development. Meanwhile, opponents believed that existing development standards were adequate and that an SPO extension would operate as an undue burden to development in the area.
¶10 On May 28, 2014, the City adopted the Ordinance. The Ordinance imposed a variety of new design standards *439 and development regulations. It contained a building size limitation of 125,000 square feet, a size drastically smaller than Schnitzer’s planned 470,000-square-foot warehouse. Concurrently with the Ordinance’s adoption, the City also added a new section to chapter 20.46 PMC to reflect the SPO’s expansion into the ML-zoned properties.
II. Procedure
¶11 Shortly after the City enacted the Ordinance, Schnitzer challenged its validity by filing a LUPA petition in the superior court. In Schnitzer’s view, the City enacted the Ordinance under the guise of legislative action, ignoring procedures for quasi-judicial, site-specific actions under the city code and state law. Schnitzer also contended that the City singled out and unfairly targeted it because the City’s constituents disfavored the proposed project.
¶12 The City moved to dismiss the petition for lack of subject matter jurisdiction because the Ordinance was not a “ ‘land use decision’ ” subject to review under LUPA. CP at 280. The superior court denied the motion. The superior court then ruled that the Ordinance was an unlawful site-specific rezone and that the Ordinance was invalid as a matter of law. The City appeals.
ANALYSIS
¶13 The City argues that the superior court lacked jurisdiction to review the validity of the Ordinance under LUPA because the Ordinance was not a “ ‘land use decision.’ ” Br. of Appellant at 12, 15. We agree.
A. Standard of Review and Land Use Decision
¶14 Whether a court has subject matter jurisdiction for a LUPA petition is a question of law that we review de novo. Durland v. San Juan County, 182 Wn.2d 55, 64, 340 P.3d 191 (2014). LUPA grants the superior court exclusive *440 jurisdiction to review a local jurisdiction’s land use decisions with the exception of decisions subject to review by bodies such as the Growth Management Hearings Board. RCW 36.70C.030(1)(a)(ii). The legislature’s purpose in enacting LUPA was to “establish! ] uniform, expedited appeal procedures and uniform criteria for reviewing [land use] decisions [by local jurisdictions], in order to provide consistent, predictable, and timely judicial review.” RCW 36.70C.010.
¶15 A “ ‘[band use decision’ ” is
a final determination by a local jurisdiction’s body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for . . . legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses.
RCW 36.70C.020(2) (emphasis added).
“Project permit” or “project permit application” means any land use or environmental permit or license required from a local government for a project action, including but not limited to building permits, subdivisions, binding site plans, planned unit developments, conditional uses, shoreline substantial development permits, site plan review, permits or approvals required by critical area ordinances, site-specific rezones authorized by a comprehensive plan or subarea plan, but excluding the adoption or amendment of a comprehensive plan, subarea plan, or development regulations except as otherwise specifically included in this subsection.
RCW 36.70B.020(4) (emphasis added).
B. Site-Specific. Rezones
¶16 Our Supreme Court has held that site-specific rezones are “project permitís]” and are thus land use decisions under LUPA subject to the superior court’s exclusive *441 jurisdiction. Woods v. Kittitas County, 162 Wn.2d 597, 610, 174 P.3d 25 (2007). “[A] site-specific rezone is a change in the zone designation of a ‘specific tract’ at the request of‘specific parties.’ ” Spokane County v. E. Wash. Growth Mgmt. Hr’gs Bd., 176 Wn. App. 555, 570, 309 P.3d 673 (2013) (internal quotation marks omitted) (quoting Woods, 162 Wn.2d at 611 n.7), review denied, 179 Wn.2d 1015 (2014). A site-specific rezone is not a project permit approval under LUPA when the rezone is approved concurrently with a comprehensive plan amendment because the statute requires that a site-specific rezone be authorized by the “then-existing” comprehensive plan to constitute a land use decision. Spokane County, 176 Wn. App. at 571.
C. Site-Specific. Rezone Requested by a Specific. Party
¶17 Here, the crux of the parties’ dispute is whether the Ordinance extending the SPO to Schnitzer’s ML-zoned property was a “site-specific” rezone and thus should be considered a land use decision subject to superior court review under LUPA. The City argues that its decision to extend the SPO cannot be considered a site-specific rezone because it was initiated by the City in its legislative capacity and no “specific party” applied for or otherwise requested a rezone. Br. of Appellant at 21. We agree.[5]
¶18 To demonstrate that the Ordinance here effectuated a site-specific rezone, the evidence must show (1) that there was a change in zone designation (2) of a specific tract and (3) that specific tract’s zoning designation change was requested by a “‘specific partly].’” Spokane County, 176 Wn. App. at 570 (internal quotation marks omitted) (quoting Woods, 162 Wn.2d at 611 n.7).
¶19 RCW 36.70C.020(2)(a) defines a “land use decision” as a final determination on “[a]n application for a project *442 permit or other governmental approval.” (Emphasis added.) Under RCW 36.70B.020(4), “project permit” means a permit required from a local government. But a public agency does not apply for a permit to itself, nor does it apply for approval of its own action. Read together, these two statutes require an application from someone other than the public entity. Here, no specific party applied for a change in the zoning classification of the Schnitzer Property. Instead, out of concern for the special character of the SPO “gateway” area, the City initiated procedures to consider extending the SPO. Schnitzer has cited no authority that a city’s decision to amend existing zoning ordinances constitutes a “change in the zone designation ... at the request of ‘specific parties.’ ” Spokane County, 176 Wn. App. at 570 (internal quotation marks omitted) (quoting Woods, 162 Wn.2d at 611 n.7).
¶20 Schnitzer relies on cases where courts have determined that site-specific rezones occurred. For instance, in Woods, our Supreme Court was asked whether the superior court had jurisdiction to decide whether a site-specific land use decision complied with the Growth Management Act, chapter 36.70A RCW. 162 Wn.2d at 603. In Woods, Kittitas County had been asked by a third party to rezone an area zoned “forest and range” into one that permitted much smaller lot sizes to provide areas for low density residential development. 162 Wn.2d at 603-04.
¶21 Schnitzer also cites Kittitas County v. Kittitas County Conservation Coalition, where the issue was whether the superior court or the Growth Management Hearings Board had subject matter jurisdiction to review a rezone request made in conjunction with a proposed comprehensive plan amendment. 176 Wn. App. 38, 45, 308 P.3d 745 (2013). Division Three of this court held that a site-specific rezone that is not authorized by a then-existing comprehensive plan is subject to review by the Growth Management Hearings Board. Kittitas County, 176 Wn. App. at 52. Schnitzer rightfully acknowledges that Kittitas *443 County is distinguishable from the present case because the Ordinance here was not enacted concurrently with a comprehensive plan amendment or a request for such an amendment.
¶22 In Spokane County, Division Three held that superior courts do not have exclusive jurisdiction under LUPA when a site-specific rezone request to change a zoning designation is made simultaneously with a request for an amendment to a comprehensive plan. 176 Wn. App. at 562. There, the comprehensive plan amendment was necessary because a business owner engaged in a nonconforming use. Spokane County, 176 Wn. App. at 562-63.
¶23 Schnitzer is correct that the rezone was authorized by its then-existing comprehensive plan. In fact, the recitals contained in the Ordinance itself state that the extension of the SPO was consistent with the City’s comprehensive plan. Significantly, however, Schnitzer fails to reconcile one aspect that is universally true in each case it cites but is not true here.
¶24 In each case on which Schnitzer relies, the site-specific rezone (or what would have been considered a site-specific rezone if permitted by the respective comprehensive plans) was requested by a specific party and either approved or denied by the local government entity involved. In Woods, an entity that owned a large amount of property applied for the change in that property’s zoning classification. 162 Wn.2d at 603-04. In Kittitas County, a property development company applied for the change in zoning designation. 176 Wn. App. at 45. And in Spokane County, a business owner seeking to expand its operations and to remedy the business’s nonconforming use was the party who applied for the zoning designation changes. 176 Wn. App. at 562-63.
¶25 To establish that the City should be viewed as a specific party applying for a rezone request, Schnitzer relies on a single reference within the PMC that says that applications to initiate consideration of matters under the *444 zoning code can be initiated by the city council. PMC 20.11.005. But Schnitzer does not point to any document in the record purporting to be the “application” by the City to initiate consideration of matters under its own zoning code. Schnitzer does not explain how the City’s Ordinance nevertheless constitutes a specific request or application by a specific party for a rezone.
¶26 For the foregoing reasons, we hold that the City’s Ordinance does not constitute a site-specific rezone and, therefore, it is not a land use decision subject to the superior court’s jurisdiction.
D. Conclusion
¶27 We reverse the superior court’s order declaring the Ordinance invalid and granting relief under LUPA in favor of Schnitzer and remand to dismiss Schnitzer’s LUPA petition for lack of subject matter jurisdiction.
Maxa, J., concurs.

 Also known as the Van Lierop property.

 Shaw Road/East Pioneer Avenue is a reference to an intersection in the vicinity. The annexation area mentioned below refers to property to the north of the intersection. Certain property to the south of the intersection was within city limits, and the SPO had already been extended to those parcels.

 There were a total of 13 parcels in the annexation area, of which Schnitzer owned 3. Only the Schnitzer Property had an ML zoning designation, while the others had various commercial zoning designations. As mentioned below, the City initially proposed an SPO expansion that would apply to all 13 parcels, but after multiple hearings and a comprehensive study by the planning commission, the city council voted to expand the SPO only to properties zoned ML, each of which Schnitzer owned.

 The parties appear to disagree as to the extent that the Ordinance affects proposed uses of the property. The City frequently remarks that the Ordinance consisted largely of “design standards,’’ but Schnitzer contends that the Ordinance fundamentally altered the type and scope of permissible uses on the land. In support of this contention, it seems that Schnitzer relies almost entirely on the building size limitation because the City is correct insofar as the rest of the Ordinance relates largely to aesthetics such as streetscape appearance and landscaping regulations.

 Because we reverse the superior court on this ground, we do not reach the City’s remaining arguments.