

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAY 1 0 2018

Fairhurst, CJ

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on May 10, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

SCHNITZER WEST, LLC, a Washington limited liability company,

Petitioner,

v.

CITY OF PUYALLUP, a Washington municipal corporation,

Respondent,

and

VIKING JV LLC,

Additional Party.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 94005-3

En Banc

Filed  MAY 1 0 2018 .

WIGGINS, J.—This case presents the question whether a city council's restrictive zoning decision is judicially reviewable under chapter 36.70C RCW, the Land Use Petition Act (LUPA), where the ordinance targeted a single property with a sole owner and was not an amendment to the city's comprehensive plan. Because such a land use decision is a site-specific rezone and is therefore reviewable under LUPA, we reverse and remand to the Court of Appeals to proceed on the merits of the

city's appeal of the superior court's decision[1] and for other proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In 2009, the city of Puyallup (City) created the "Shaw-East Pioneer Overlay Zone" (SPO zone) as part of an amendment to the City's comprehensive plan. An overlay zone, such as the SPO zone, establishes development criteria and standards to supplement the base zoning standards that already exist. The Shaw Road and East Pioneer area is considered to be a symbolic "gateway" to the City, and in creating the SPO zone, the City intended to establish additional standards to encourage compatible development in that area. When the SPO zone was adopted, the property at issue here was outside the boundaries of the City.

In 2012, the City annexed the property at issue, which was zoned for industrial and business park use. It also annexed several nearby commercially zoned properties. The City did not extend the SPO zone into the area at the time.

In 2013, Schnitzer West LLC entered into a contract to purchase the property at issue with plans for development. Schnitzer submitted a comprehensive plan amendment and rezone request to the City to convert a portion of the property from a business/industrial park zone to a light manufacturing/warehouse zone.

---

[1] When this case was before the Court of Appeals, the underlying ownership interest in the property was transferred to Puyallup 5th Avenue LLC which subsequently transferred ownership to Viking JV LLC. The City moved to dismiss on the ground that Schnitzer lacked standing. Schnitzer claims to have a continuing contingent interest in the property. We deny without prejudice the City's motion to dismiss. The City may raise again the issue of standing on remand to the Court of Appeals.

Over the verbal objection of at least one council member, the City approved Schnitzer's comprehensive plan amendment and rezone request (Ordinance 3052) by a vote of four to two, finding that the necessary criteria for redesignation and rezoning was met. The City also found that if the comprehensive plan amendment and rezone request were denied, industrial development on the property would not be economically viable.

The new zoning designation allowed warehouse construction on the property and brought the property into conformity with the zoning designations of adjacent parcels.

Soon after Schnitzer received approval of its comprehensive plan amendment and rezone request, two new city council members were elected, each replacing a council member who had voted in favor of granting Schnitzer's comprehensive plan amendment and rezone request. The city council immediately proposed and adopted a 120-day emergency development moratorium on all development in the annexed area, including the Schnitzer property. After the moratorium was proposed but before it was adopted, Schnitzer filed an application to construct a 470,000 square foot warehouse on the property.

Without consulting the rest of the council, four council members then drafted and proposed Ordinance 3067. This new ordinance extended the SPO zone to the Schnitzer property. The three council members who had been omitted from the drafting process opposed Ordinance 3067 and the proceedings that surrounded it.

Mayor John Knutsen voiced his dismay with the ordinance itself, saying, "This is—I can't see this as anything but spot-zoning. If—if it's not, then I can't say where spot-zoning exists." Clerk's Papers (CP) at 647. Council member Tom Swanson shared the concern that the ordinance constituted spot-zoning, saying, "I would prefer looking at doing it citywide, if that's something, which means it would go back to planning commission at this time, versus attaching it to one particular three-parcel zone and one overlay." CP at 643. He continued, "So that's—I mean, I don't like spot-zoning. I don't like targeting one property owner for different zoning than everybody else has. If we're going to do a Shaw Road overlay, you do it to the whole area." CP at 644.

Council member Steve Vermillion was disconcerted with the way Ordinance 3067 had been drafted and proposed, stating that he was "not impressed with the fact that four people moved this forward and three Council members were left in the dark on it." CP at 642. He continued, suggesting that "the City manager and the City attorney need to put a halt to this four-member control and bringing forward documents without the consent of the whole Council." *Id.* Mayor Knutsen was similarly concerned with the way the ordinance had been drafted and proposed: "I'm deeply concerned if – if – if, indeed, four Council members instructed you to bring up an ordinance, that's to be done here. It's to be done here and only here." CP at 647. He continued, saying that he was "stunned" when he saw the ordinance and called Vermillion and Swanson: "They were totally unaware of this. So if we're to be a four-

4

member Council, then let's – you know, then let's not expect things to go as smoothly as we would wish." *Id.*

The city council voted four to three to hold a special meeting at which council members would vote on Ordinance 3067. CP at 656. Mayor Knutsen and council members Vermillion and Swanson voted against the special meeting. *Id.*

At the special meeting, against the recommendation of the planning commission, without public comment or hearing, and with only four out of seven council members present,[2] the city council approved Ordinance 3067.

Ordinance 3067 applied solely to the Schnitzer property. The city council did not extend the ordinance to the surrounding properties to which the moratorium had applied, despite similar characteristics, location, and zoning. Through Ordinance

---

[2] After voting against holding a special meeting to vote on the passage of Ordinance 3067, Knutsen, Vermillion, and Swanson sent letters explaining their absences from the special meetings. These letters stated in part:

> "As for the special meeting, after ten-plus years, I see no reason why this item could not have been put on the next Council meeting's agenda so we could all attend it. . . ."
>
> . . . .
>
> "I am dismayed that four Council members opted to not allow citizen comments, which apparently has been implemented to eliminate dissent. . . ."
>
> . . . .
>
> ". . . I would request Council delay action to our next regularly scheduled meeting, as I feel this issue rising to a level of importance which should be openly discussed by all members with all viewpoints being expressed."
>
> "I have heard no reason explaining why this action cannot be delayed until next Tuesday's regular Council meeting, when more and hopefully all -- including myself -- members are able to attend."

CP at 659.

3067, the City imposed major restrictions on the Schnitzer property: the Ordinance created and applied a new overlay zone for "limited manufacturing" (ML-SPO) uses to the Schnitzer property and added a building size limitation of 125,000 square feet. It also imposed regulations pertaining to outdoor storage uses; standards governing the design, size, setback, and orientation of buildings; requirements dictating landscaping, open space usage, and pedestrian infrastructure; provisions constraining signage; and rules for storm water management.

Schnitzer filed a land use petition in Pierce County, challenging the ordinance as an unlawful site-specific rezone.[3] The City filed a motion to dismiss. The trial court ruled in favor of Schnitzer, denied the motion to dismiss, and held Ordinance 3067 invalid. On appeal, a majority of the Court of Appeals reversed the trial court and dismissed the action, holding that Ordinance 3067 was not a "land use decision" reviewable by the superior court under LUPA. Chief Judge Bjorgen penned a persuasive dissent, concluding that Ordinance 3067 was reviewable under LUPA. *Schnitzer W., LLC v. City of Puyallup*, 196 Wn. App. 434, 444-50, 382 P.3d 744 (2016) (Bjorgen, C.J., dissenting). Chief Judge Bjorgen analyzed the content, context, purpose, and effect of Ordinance 3067 and determined that it "was not an adoption of legislative or area-wide policy, but rather a rezone of a specific, relatively small property in the context of a development proposal on that property," *id.* at 447, and that "[w]hether a rezone is proposed by a property owner, a neighbor, or the local

---

[3] Schnitzer also filed a petition with the Growth Management Hearings Board, which was stayed pending resolution of our review.

government has little to do with the[ ] distinctions [between legislative and site-specific actions]," *id.* at 449-50.

Schnitzer appealed the dismissal of its land use petition, and we granted review.

STANDARD OF REVIEW

Whether a city council's decision regarding the use of land is reviewable by the superior court under LUPA is a question of law that this court reviews de novo. *See Durland v. San Juan County*, 182 Wn.2d 55, 64, 340 P.3d 191 (2014).

ANALYSIS

Ordinance 3067 was approved by the Puyallup City Council against the recommendation of the Planning Commission, without public comment or hearing, and with only four council members present. It applies *solely* to the Schnitzer property and imposes major restrictions. The City argues that Ordinance 3067 is not reviewable under LUPA because it was proposed by the city council and was not a ruling in response to an application by a third party. The City also argues that Ordinance 3067 is a legislative action expressly excluded from review under LUPA. We disagree.

I.      Ordinance 3067 is a site-specific rezone and can be challenged only in superior court under LUPA

The City argues that regardless of its content, the ordinance cannot be subject to LUPA review because it was proposed by the city council and was not an application by an outside party. We disagree. Ordinance 3067 is a site-specific rezone that must be challenged in superior court under LUPA.

### A. LUPA grants superior courts exclusive jurisdiction to review challenges to site-specific rezones

There are two primary mechanisms by which to challenge local jurisdictions' land use decisions: review by the Growth Management Hearing Board (GMHB) under the Growth Management Act (GMA), chapter 36.70A RCW, or review by a superior court under LUPA. *See Woods v. Kittitas County*, 162 Wn.2d 597, 608-10, 174 P.3d 25 (2007) (explaining the statutory framework for review of local jurisidictions' land use decisions). And, "[i]f a GMHB does not have jurisdiction to consider a petition, it must be filed in superior court under LUPA." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 178, 4 P.3d 123 (2000).

GMHBs have limited jurisdiction and may decide *only* challenges to or amendments of comprehensive plans or development regulations. *Woods*, 162 Wn.2d at 609. GMHBs *do not* have jurisdiction over "challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations." *Id.* at 610. LUPA, however, grants superior courts *exclusive* jurisdiction to review land use decisions unless the decision is made by a body outside a local jurisdiction or is subject to review by a quasi-judicial body such as the GMHB. RCW 36.70C.030; *Woods*, 162 Wn.2d at 610 ("LUPA grants the superior court exclusive jurisdiction to review a local jurisdiction's land use decisions, with the exception of decisions subject to review by bodies such as the GMHBs." (emphasis omitted)).

Accordingly, a challenge to a site-specific land use decision can be brought only under LUPA. *Woods*, 162 Wn.2d at 610 ("GMHBs do not have jurisdiction to

8

decide challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations. A challenge to a site-specific land use decision should be brought in a LUPA petition at superior court." (citation omitted)). LUPA defines a "land use decision" as a "final determination . . . on . . . [a]n application for a project permit or other governmental approval." RCW 36.70C.020(2)(a). And, "[a] site-specific rezone occurs 'when there are specific parties requesting a classification change for a specific tract.'" *Woods*, 162 Wn.2d at 611 n.7 (quoting *Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981)).

A site-specific rezone requires three factors: (1) a specific tract of land, (2) a request for a classification change, and (3) a specific party making the request. *Id.*

For example, in *Feil v. Eastern Washington Growth Management Hearings Board*, we held that a recreational overlay district was a site-specific rezone. 172 Wn.2d 367, 380, 259 P.3d 227 (2011). In *Feil*, the Washington State Parks and Recreation Commission applied for a recreational overlay district permit from Douglas County to develop a trail along the shore of the Columbia River. *Id.* at 373. The overlay permit dealt with a single tract of land. *Id.* at 380. This court determined that the permitting decision was a site-specific rezone. *Id.* There, the Parks Commission was the specific party, the recreational overlay was a classification change, and the parcel of land was a specific tract.

To determine whether Ordinance 3067 is reviewable under LUPA, we must determine whether Ordinance 3067 applies to a specific tract of land, whether it is a

classification change, and whether it was requested by a specific party. Because Ordinance 3067 is a classification change of a specific tract of land requested by a specific party, we hold that it is a site-specific rezone.

### B. The Schnitzer property is a specific tract of land

First, Ordinance 3067 applies not area-wide, but to a specific tract of land: the Schnitzer property. Puyallup Ordinance 3067 (May 28, 2014); CP at 17-23. It carves out the Schnitzer property from adjacent parcels, despite the council's initial stated intent that the new zoning overlay would apply to all newly annexed properties. *See* CP at 124-29. Ordinance 3067 applies *only* to the Schnitzer property, leaving all surrounding annexed properties unaffected, despite their similar characteristics, location, and zoning. Puyallup Ordinance 3067; CP at 19-21, 23.

### C. Ordinance 3067 is a classification change

Second, Ordinance 3067 is a classification change. Ordinance 3067 applied a new zoning overlay to the Schnitzer property. The overlay changes the Schnitzer property's zoning classification from limited manufacturing to ML-SPO; imposes a building size limitation; restricts the design, size, setback, and orientation of buildings; imposes landscaping, open space, and pedestrian infrastructure requirements; and establishes regulations pertaining to outdoor storage uses, storm water management, and signage. *See Feil*, 172 Wn.2d 367 (application of a recreational overlay district was a classification change of the tract to which it applied).

### D. The city council is a specific party

Finally, Ordinance 3067 was requested by a specific party. The City argues that a zoning decision cannot be a site-specific rezone unless it was initiated by a third-

party application, and that the government "does not apply for a permit to itself, nor does it apply for approval of its own action." *Schnitzer*, 196 Wn. App. at 442. Accordingly, the City argues that Ordinance 3067 was not a site-specific rezone because the ordinance was proposed by the City. We disagree: a government can approve its own actions, can apply for or initiate a request for its own approval, and can be a specific party for the purpose of a site-specific rezone classification.

First, the government is regularly characterized as approving its own actions. The Washington State Constitution contemplates government approval of its own actions by categorizing the governor's and the legislature's actions as "approval" prior to an act becoming law.[4] Governmental approval for its own actions is also contemplated in the United States Constitution, which categorizes both the president's actions and Congress's actions as "approv[al]." U.S. CONST. art. I, § 7, cl. 2. Statutes also characterize the government as approving its own actions. For example, RCW

---

[4] Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor. If he *approves*, he shall sign it; but if not, he shall return it, with his objections, to that house in which it shall have originated . . . . If, after such reconsideration, two-thirds of the members present shall agree to pass the bill it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if *approved* by two-thirds of the members present, it shall become a law.

WASH. CONST. art. III, § 12 (emphasis added).

This court has reinforced this characterization: "In *approving* or disapproving legislation, the Governor acts in a legislative capacity and as part of the legislative branch of government." *Hallin v. Trent*, 94 Wn.2d 671, 677, 619 P.2d 357 (1980) (emphasis added).

35A.12.130 requires every ordinance passed by the city council to be presented to and *approved* by the mayor.[5]

And here, even the Puyallup City Council expressly classified its actions as "approval" by articulating that Ordinance 3067 was "[p]assed and *approved* by City Council of the City of Puyallup at an open public meeting on the 28th day of May, 2014." Puyallup Ordinance 3067 (May 28, 2014) (emphasis added); CP at 21-22.

Second, the government can be a specific party for the purpose of a site-specific rezone classification. *See, e.g., Feil*, 172 Wn.2d at 380 (a rezone initiated by the Washington State Parks and Recreation Commission was a site-specific rezone exclusively reviewable under LUPA); *cf. Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 176 Wn. App. 555, 571-72, 309 P.3d 673 (2013) (The county initiated a rezone of an individual property and argued that the rezone was site-specific, and the Court of Appeals articulated that "a site-specific rezone is a project permit approval under LUPA if it is authorized by a then-existing comprehensive plan.").

The legislature enacted LUPA to establish "uniform, expedited appeal procedures" for "judicial review of land use decisions made by local jurisdictions" in order to provide "consistent, predictable, and timely judicial review." RCW 36.70C.010. The standards governing relief under LUPA primarily focus on ensuring

---

[5] "Every ordinance which passes the council in order to become valid must be presented to the mayor; if he or she *approves* it, he or she shall sign it, but if not, he or she shall return it with his or her written objections to the council . . . ." RCW 35A.12.130 (emphasis added).

that a party impacted by a land use decision was treated fairly *by the decision-maker*, in process and in substance.[6]

Limiting challenges exclusively to land use decisions proposed by nongovernmental parties would result in a framework under which the decision-maker's duties of fairness to an interested party change based upon the origin of the initial request. This would contravene LUPA's objective of providing "uniform, . . . consistent, predictable, and timely judicial review" and would effectively grant city councils the opportunity to make decisions with impunity, unreviewable by the superior court, if the request was self-initiated.

Furthermore, here the Puyallup Municipal Code (PMC) itself names the city council as a specific party that has the authority to initiate a site-specific rezone application. *See* PUYALLUP MUNICIPAL CODE 20.11.005. Chapter 20.11 of the PMC "establishes the rules and procedures for handling and management of project permit applications and records pertaining to matters under this code." PUYALLUP MUNICIPAL CODE 20.11.001. The next section lists the parties that may initiate a rezone application, explicitly including the city council:

> 20.11.005 General rules for processing applications.
>
> Applications to initiate consideration of matters under this code may be made by persons or agencies, including owners, bona fide agents, the commission and *the council*.

---

[6] Relief is granted under LUPA when one of six standards has been met: (1) the decision-maker engaged in unlawful procedure or failure to follow a prescribed process; (2) the decision was an erroneous interpretation of law; (3) the decision was not supported by substantial evidence; (4) the decision was an erroneous application of the law to the facts; (5) the decision was outside the authority or jurisdiction of the decision-maker; or (6) the decision violates the constitutional rights of the party seeking relief. RCW 36.70C.130.

PUYALLUP MUNICIPAL CODE 20.11.005 (emphasis added). Here, the City can be and is the specific party that sought to apply an overlay zone and its major restrictions to the Schnitzer property.

Accordingly, Ordinance 3067 is a site-specific rezone. The zoning overlay is a classification change, the Schnitzer property is a specific tract, and the city council is a specific party. Because Ordinance 3067 is a site-specific rezone, it is subject to exclusive review under LUPA.

## II.   Ordinance 3067 is not a legislative action

LUPA expressly excludes from review "applications for legislative approvals such as area-wide rezones and annexations." RCW 36.70C.020(2)(a). Ordinance 3067 is a site-specific rezone and not a legislative approval; therefore, Ordinance 3067 is not excluded from LUPA review.

The City argues that Ordinance 3067 is a legislative action excluded from review under LUPA. In arguing that Ordinance 3067 is legislative, the City relies on the *Raynes*[7] factors. However, the *Raynes* factors are inapposite when determining whether an action qualifies as "legislative" under LUPA.

In *Raynes*, we created a four-factor test[8] for determining whether an action is legislative for the purpose of deciding whether a statutory writ of certiorari is warranted

---

[7] *Raynes v. City of Leavenworth*, 118 Wn.2d 237, 244, 821 P.2d 1204 (1992).

[8] The four factors are (1) whether the action results from a duty the court could have been charged with, (2) whether the courts have historically performed such duties, (3) whether existing law is being applied to a set of facts or if a new general law of prospective application is being applied, and (4) whether the action resembles court duties as opposed to legislative or administrative duties. *Id.*

14

under chapter 7.16 RCW. *Raynes*, 118 Wn.2d at 244 ("A 4-part test has been developed to determine when a given action is quasi-judicial or legislative in relation to the writ."). However, LUPA replaced the writ as the exclusive means for judicial review of land use decisions. We have explicitly declined to apply the requirements for a statutory writ to review under LUPA:

> The common law writ of certiorari has been codified in chapter 7.16 RCW as the writ of review, which generally grants review of only quasi-judicial determinations. . . . However, LUPA makes no reference to chapter 7.16 RCW. Reading LUPA together with chapter 7.16 RCW to ascertain legislative intent is not consistent with rules of statutory interpretation. . . .
>
> Construing the express language of RCW 36.70C.030(1) ("[t]his chapter replaces the writ of certiorari for appeal of land use decisions and shall be the *exclusive* means of judicial review of land use decisions") (emphasis added) according to its obvious meaning without regard to previous common law or, in this case, chapter 7.16 RCW, all land use decisions are subject to LUPA unless specifically excluded under RCW 36.70C.030.

*Chelan County v. Nykreim*, 146 Wn.2d 904, 930-31, 52 P.3d 1 (2002) (third alteration in original) (footnotes omitted). As a result, because *Raynes* examined only the procedures for a statutory writ, we cannot rely on its test when determining whether Ordinance 3067 is a legislative action under LUPA.

Instead, to determine whether Ordinance 3067 is a legislative action excluded by LUPA, we turn to statutory interpretation. In doing so, we hold that Ordinance 3067 is not excluded from LUPA review.

LUPA does not exclude all legislative action; rather, it excludes "applications for legislative approvals such as area-wide rezones and annexations." RCW 36.70C.020(2)(a). However, the inclusion of "such as" in this section indicates the list

15

of excluded "legislative approvals" is illustrative, not exhaustive. *Cf. In re Postsentence Review of Leach*, 161 Wn.2d 180, 186, 163 P.3d 782 (2007) (because the statute lacked a provision for "similar" or "like" offenses, "the legislature plainly meant for these enumerated crimes to be the exclusive and complete list").

Nonetheless, the plain language of RCW 36.70C.020(2)(a) indicates that the illustrative examples were intended to *limit* the scope of exclusions. *Cf. State v. Larson*, 184 Wn.2d 843, 849, 365 P.3d 740 (2015) (the illustrative examples in RCW 9A.56.360, which state in part, "The person was, at the time of the theft, in possession of an item, article, implement, or device designed to overcome security systems including, but not limited to, lined bags or tag removers," were intended to limit the scope of the statute).

Principles of statutory interpretation suggest that "general terms, when used in conjunction with specific terms in a statute, should be deemed only to incorporate those things similar in nature or 'comparable to' the specific terms." *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 151, 3 P.3d 741 (2000) (quoting *John H. Sellen Constr. Co. v. Dep't of Revenue*, 87 Wn.2d 878, 883-84, 558 P.2d 1342 (1976)). Therefore, the scope of exclusions under LUPA is limited to actions similar in nature to area-wide rezones and annexations.

Further, the modification of "rezone" by "area-wide" is exclusive, indicating that rezones are only part of the illustrative list when they are area-wide, not when they are site-specific. *See In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002) ("Under expressio unius est exclusio alterius, a canon of statutory construction, to

16

express one thing in a statute implies the exclusion of the other. Omissions are deemed to be exclusions." (citation omitted)).

Here, Ordinance 3067 is not an area-wide rezone or annexation, nor is it similar in nature to either. Rather, Ordinance 3067 is a site-specific rezone, confined to a specific tract and impacting a sole owner. *See supra* Section I. Thus, Ordinance 3067 does not fall within the category of "legislative approvals such as area-wide rezones and annexations." As a result, Ordinance 3067 is not excluded from LUPA review.

## CONCLUSION

We hold that site-specific rezones—regardless of the initiating party—are reviewable under LUPA. Because Ordinance 3067 is a site-specific rezone, the Ordinance is subject to review in the superior court under LUPA. We reverse the Court of Appeals and hold that the superior court correctly denied the City's motion to dismiss. We remand to the Court of Appeals to proceed on the merits of the City's appeal of the superior court's decision and for other proceedings consistent with this opinion.

_____

WE CONCUR:

No. 94005-3

GONZÁLEZ, J. (concurring)—I agree with the lead opinion, but write separately to emphasize that Land Use Petition Act (LUPA) (ch. 36.70C RCW) review in this context is limited. In order to preserve the chance to develop its property, Schnitzer West LLC submitted a short plat application to the city of Puyallup on January 7, 2014. That short plat application vested the project to the city's land use regulations at the time. RCW 58.17.033; RCW 19.27.095. The legislature intended property owners to have recourse when "municipalities . . . abus[e] their discretion with respect to land use and zoning rules." *Snohomish County v. Pollution Control Hr'gs Bd.*, 187 Wn.2d 346, 362, 386 P.3d 1064 (2016). Consequently, Schnitzer may seek redress under LUPA because the city passed a site-specific ordinance targeting Schnitzer's existing proposal. *See, e.g.*, Clerk's Papers at 463 (a council member described the ordinance as "personal retribution against Schnitzer"); Resp't's Opening Br., *Schnitzer West, LLC v. City of Puyallup*, No. 47900-1-II, at 8 & n.2 (Wash. Ct. App. Dec 7., 2015) ("the Project . . . will immediately become a 'nonconforming' structure on the site, because it will not comply with the Ordinance"). On narrower grounds, I concur.

Gonzáles, J.

No. 94005-3

JOHNSON, J. (dissenting)—The lead opinion ignores the statutory language in concluding that the city of Puyallup (City) qualifies as "an applicant" for a "project permit" for purposes of judicial review under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The statutory language does not support the lead opinion's conclusion, and the Court of Appeals should be affirmed.

The statutory language is fairly clear that a "land use decision" is a final determination of "[a]n application for a project permit or other governmental approval." RCW 36.70C.020(2)(a). "Project permit" is then defined as a "permit or license required *from* a local government for a project action." RCW 36.70B.020(4) (emphasis added). The Court of Appeals correctly read these two statutes together to conclude that a land use decision reviewable under LUPA requires an application that the government responds to and then acts on.

*Schnitzer West, LLC v. City of Puyallup*, No. 94005-3
(Johnson, J., dissenting)


The lead opinion's reasoning that the City can qualify as an applicant for a project permit makes no logical or legal sense. Here, the City was not approving or ruling on an application. The Court of Appeals correctly noted that Schnitzer does not point to any "application" by the City to initiate expansion of the SPO (Shaw-East Pioneer Overlay) zone. *Schnitzer W., LLC v. City of Puyallup*, 196 Wn. App. 434, 444, 382 P.3d 744 (2016), *review granted*, 187 Wn.2d 1025 (2017). Under the statute, a city cannot be an applicant; a government agency does not apply to permit itself, nor does it apply for approval of its own actions.

The lead opinion and concurrence seem most offended by the motivations of city council members and make much of the argument that the City deliberately "targeted" the Schnitzer property, but this should make no difference under the statutory provisions.[1] Our cases recognize the authority of cities and counties to enact ordinances that may result in a nonconforming use designation for a particular property. *See Ackerley Commc'ns, Inc. v. City of Seattle*, 92 Wn.2d 905, 602 P.2d 1177 (1979) (upholding an ordinance requiring the removal of outdoor

---

[1] Additionally, it is hard to imagine how the Ordinance "targets" Schnitzer when the City has conceded the Ordinance does not apply to Schnitzer.

2

advertising signs after a three to seven year amortization period); *Horan v. City of Federal Way,* 110 Wn. App. 204, 39 P.3d 366 (2002) (recognizing the city's authority to enact an ordinance that resulted in a nonconforming use designation and the amortization of that use, but not until compensation procedures were followed); *Asia v. City of Seattle,* 4 Wn. App. 530, 482 P.2d 810 (1971) (upholding an ordinance that authorized the city to discontinue the defendant's advertising sign that was deemed nonconforming).

Even though Schnitzer's claim is not reviewable under LUPA, as amicus Washington State Association of Municipal Attorneys accurately recognizes, a property owner has multiple ways to challenge a city's legislative decision if he or she feels targeted. Schnitzer has filed a petition with the Growth Management Hearings Board (GMHB), which is stayed pending our review of this case, and is free to pursue that avenue of relief. In addition to review by the GMHB, a property owner can seek redress through a declaratory judgment or a writ process. The Court of Appeals' conclusion entails a straightforward analysis of the statutory

3

*Schnitzer West, LLC v. City of Puyallup*, No. 94005-3
(Johnson, J., dissenting)


language and should be affirmed.


Johnson, J.

Yu, J.

Madsen, J.

Fairhurst, C.J.

4