[No. 66125-6-I.   Division One.   December 5, 2011.]

PATRICK A.T. JONES, *Appellant*, v. THE TOWN OF HUNTS POINT, *Respondent*.

*Marianne K. Jones* and *Mona K. McPhee* (of *Jones Law Group PLLC*), for appellant.

*Bob C. Sterbank* (of *Kenyon Disend PLLC*), for respondent.

¶1 BECKER, J. — This appeal concerns a restriction on the face of a 1951 plat in the town of Hunts Point. The town interpreted the restriction as preventing appellant Patrick Jones from subdividing his lot into two independent lots. We affirm the hearing examiner's adoption of the town's interpretation and the examiner's conclusion that the town has not abandoned the restriction.

¶2 According to the hearing examiner's findings of fact, the Hunts Point Park Addition subdivision was approved by King County in December 1951. At the time, it consisted of 22 lots in block 1 and 16 lots in block 2. Patrick Jones and his wife, Marianne Jones, owned lot 11 in block 2, with 24,045 square feet. In 2009, they completed a preapplication form to subdivide lot 11 into two roughly equal lots. The town engineer informed them that the town would not accept a short subdivision application because subdivision was prohibited by a restriction on the face of the plat. This decision was affirmed, first by the town hearing examiner and then by the superior court. This appeal followed.

### Marianne Jones is not a necessary party

¶3 As a preliminary matter, the town contends review of this appeal is barred because Marianne Jones is not named as a party in the land use petition. Patrick alone was named as the petitioner. Marianne, a lawyer, filed the petition on behalf of Patrick. Patrick filed a declaration by Marianne stating that she intended to abandon her appeal and had quitclaimed her interest in the property to her husband as his separate property.

■ ¶4 "The procedural requirements of the Land Use Petition Act (LUPA) have to be strictly met before a trial court's appellate jurisdiction under the Act is properly invoked." *Citizens to Preserve Pioneer Park, LLC v. City of Mercer Island*, 106 Wn. App. 461, 467, 24 P.3d 1079 (2001). The act provides that certain persons "shall be parties":

(2) A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served on the following persons who shall be parties to the review of the land use petition:

(a) The local jurisdiction, which for purposes of the petition shall be the jurisdiction's corporate entity and not an individual decision maker or department;

(b) Each of the following persons if the person is not the petitioner:

(i) Each person identified by name and address in the local jurisdiction's written decision as an applicant for the permit or approval at issue; and

(ii) Each person identified by name and address in the local jurisdiction's written decision as an owner of the property at issue;

(c) If no person is identified in a written decision as provided in (b) of this subsection, each person identified by name and address as a taxpayer for the property at issue in the records of the county assessor, based upon the description of the property in the application; and

(d) Each person named in the written decision who filed an appeal to a local jurisdiction quasi-judicial decision maker regarding the land use decision at issue, unless the person has abandoned the appeal or the person's claims were dismissed before the quasi-judicial decision was rendered. Persons who later intervened or joined in the appeal are not required to be made parties under this subsection.

RCW 36.70C.040.

¶5 Marianne was identified by name and address in the hearing examiner's decision as an owner of the property at issue and as an applicant for the subdivision. The town

contends that she was a necessary party under both subsections of RCW 36.70C.040(2)(b). But Marianne was also named in the written decision as a person who filed the appeal to the hearing examiner. Jones contends that her nonjoinder is excused by her abandonment of the appeal under RCW 36.70C.040(2)(d). The town responds that subsection (d) does not excuse the requirements of subsection (b).

¶6 The town relies on a case in which a land use petition was barred by the petitioner's failure to name and serve a party to the appeal before the local decision maker. *Suquamish Indian Tribe v. Kitsap County*, 92 Wn. App. 816, 965 P.2d 636 (1998). The status of a person who has abandoned her appeal was not addressed in that case. There is no compelling reason to require dismissal of a lawsuit for failure to name as a party a person who no longer wishes to participate in the matter. *See Citizens to Pres. Pioneer Park, LLC*, 106 Wn. App. at 470; *Hale v. Island County*, 88 Wn. App. 764, 770, 946 P.2d 1192 (1997). We conclude the appeal is properly before us.

¶7 The decision to be reviewed is the decision of the hearing examiner. RCW 36.70C.020(2); HUNTS POINT MUNICIPAL CODE (HPMC) 17.05.030 ("The decision of the hearing examiner shall be given the effect of a final decision of the town council.").

*The town has the authority to enforce the restriction*

¶8 The restriction recorded on the face of the 1951 plat states as follows:

> No lot or portion of a lot in this plat shall be divided and sold or resold, or ownership changed or transferred, whereby the ownership of any portion of this plat shall be less than the area shown on the face of this plat.

> All lots in this plat are restricted for R-1 Residence District Use governed by and subject to restrictions rules and regulations of the County Zoning Resolution No. 11373 and subsequent changes thereto by official County Resolution.

Approved for Septic Tanks installed in accordance with specifications of the King County Health Department EXCEPT Lots 2, 5, 6, 13, 14, 15, 16, 17, 18, & 21 Block 1 and Lots 1, 2, 3, & 4 Block 2 which must receive written approval from the Health Dept. before a building permit can be obtained. All lots in this Plat are to be Subject to individual approval by the Health Department.

¶9 The town engineer interpreted this restriction as prohibiting Jones' proposal to divide his lot in two. The engineer communicated his rationale to Jones in a letter dated December 3, 2009, stating in part that the restriction had the force of law and was not simply a private covenant. Jones contends the plat restriction is a private covenant that the town has no authority to enforce.

¶10 Jones relies on *Viking Properties, Inc. v. Holm*, 155 Wn.2d 112, 118 P.3d 322 (2005). A covenant involved in that case required larger lot sizes than would have been necessary under applicable statutes and the plans and ordinances of the city of Shoreline, where the properties subject to the covenant were located. In the course of upholding the covenant as an enforceable condition imposed on each lot by the original subdivision grantor, the Supreme Court recognized as proper the city's concession that it had no authority to enforce or invalidate restrictive covenants. *Viking*, 155 Wn.2d at 130. Jones attempts to expand the court's comment into a more general holding that local governments lack authority to enforce limitations on lot density that are specific to a plat. His argument fails to come to grips with the obligations imposed upon local government by subdivision statutes.

¶11 The Hunts Point Municipal Code empowers the town engineer to review short subdivision applications under chapter 58.17 RCW. HPMC 17.05.030. One purpose of the code is to ensure that subdivisions approved by the town conform with all state statutes. HPMC 17.05.020. Among the state statutes with which subdivisions in Hunts Point must conform are the platting statutes, chapter 58.17

RCW. RCW 58.17.170 states that a subdivision "shall be governed by the terms of approval of the final plat." Necessarily, then, the town must enforce restrictions imposed upon a subdivision as a term or condition of approval.

¶12 Jones argues that RCW 58.17.170 is no longer applicable because it states that a subdivision shall be governed by the terms of approval of the final plat for seven years after final plat approval and the Hunts Point plat was approved almost 60 years ago.[1] Because he raises this argument for the first time in his reply brief in this appeal, we need not address it. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). In any event, the language Jones refers to has been interpreted as stating the duration of time that a property owner's development rights in a formal subdivision remain vested from the time of plat approval. *See Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 281-82, 943 P.2d 1378 (1997). It has not been interpreted as a statute of limitations beyond which the terms of approval of a subdivision no longer have legal effect.

¶13 The hearing examiner concluded the town was required to apply the plat restriction to Jones' application. To the extent Jones contends the hearing examiner erred by

---

[1] When the legislative body of the city, town or county finds that the subdivision proposed for final plat approval conforms to all terms of the preliminary plat approval, and that said subdivision meets the requirements of this chapter, other applicable state laws, and any local ordinances adopted under this chapter which were in effect at the time of preliminary plat approval, it shall suitably inscribe and execute its written approval on the face of the plat. The original of said final plat shall be filed for record with the county auditor. One reproducible copy shall be furnished to the city, town or county engineer. One paper copy shall be filed with the county assessor. Paper copies shall be provided to such other agencies as may be required by ordinance. Any lots in a final plat filed for record shall be a valid land use notwithstanding any change in zoning laws for a period of seven years from the date of filing. A subdivision shall be governed by the terms of approval of the final plat, and the statutes, ordinances, and regulations in effect at the time of approval under RCW 58.17.150(1) and (3) for a period of seven years after final plat approval unless the legislative body finds that a change in conditions creates a serious threat to the public health or safety in the subdivision.

RCW 58.17.170.

viewing the plat restriction as a term of approval of the 1951 subdivision, his argument fails. When reviewing a challenge to the sufficiency of the evidence under RCW 36.70C.130(1)(c), this court views the evidence "and any reasonable inferences in the light most favorable to the party that prevailed in the highest forum exercising fact-finding authority." *Willapa Grays Harbor Oyster Growers Ass'n v. Moby Dick Corp.*, 115 Wn. App. 417, 429, 62 P.3d 912 (2003). The inference that the restriction was a term of approval is supported by the fact that it was printed on the face of the plat.

¶14 Another pertinent statute states that when a proposed subdivision will violate a restrictive covenant, the applicant must obtain the approval of parties subject to the covenant before the restriction may be altered:

> If the subdivision is subject to restrictive covenants which were filed at the time of the approval of the subdivision, and the application for alteration would result in the violation of a covenant, the application shall contain an agreement signed by all parties subject to the covenants providing that the parties agree to terminate or alter the relevant covenants to accomplish the purpose of the alteration of the subdivision or portion thereof.

RCW 58.17.215. As one basis for denying Jones' application, the town engineer noted that Jones did not submit an agreement to alter the restriction signed by other property owners who are subject to the restriction. The town engineer was correct to insist on such an agreement before allowing Jones to proceed.

¶15 In short, the town was enforcing statutory mandates, not impermissibly conducting a private action based on a private covenant. *Viking* does not compel reversal. As the hearing examiner correctly determined, the town was required by local ordinance and statute to interpret and apply the plat restriction to Jones' application.

## *The restriction prohibits subdivision*

¶16 The next issue is whether the town engineer properly interpreted the first paragraph of the plat restriction, which states, "No lot or portion of a lot in this plat shall be divided and sold or resold, or ownership changed or transferred, whereby the ownership of any portion of this plat shall be less than the area shown on the face of this plat." The hearing examiner stated that reasonable minds "may differ as to the meaning of the plat restriction" but concluded that he was bound to give substantial weight to the decision of the town engineer. The hearing examiner concluded that the town engineer rightly interpreted this language as prohibiting subdivision of lots in the plat.

¶17 According to Jones, the first paragraph of the restriction does not bar his application because it states that no lot "shall be divided and sold or resold," and he proposed only to divide the lots, not to sell them. In his view, there can be no violation of the restriction until a newly created lot is actually sold.

¶18 One of the ways a party challenging a land use decision may obtain relief is by showing that "the land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C-.130(1)(b). Jones contends the interpretation of the plat restriction is purely a question of law, to be reviewed de novo without deference to the town engineer.

¶19 Arguably, the plat restriction itself is not "a law" and the town engineer's interpretation of it was not entitled to deference. But even so, the interpretation advocated by Jones would be an exceptionally strained construction of the text of the restriction. It is to be avoided because it would lead to an absurd result. *See Viking*, 155 Wn.2d at 122. It is undisputed that once a lot in Hunts Point is subdivided and recorded, the lot can legally be sold or

transferred to a new owner without the town having any right to intervene. If the restriction is not applied at the time of subdivision, it could not serve the purpose of maintaining low residential density within the plat.

### *The restriction is a control on residential density*

¶20  Jones contends, however, that the purpose of the plat restriction was not to maintain the existing residential density of the plat. Rather, he claims, it was imposed only to address the health department's concern in 1951 that the platted lots needed to maintain their size to assure adequate drainage for septic tanks. The concern about septic tank drainage no longer exists, he points out, because all homeowners have since been required to connect to a sewer system.

¶21  The third paragraph of the restriction does address health department concerns about septic tanks, but there is no indication that the first paragraph is limited by the third paragraph. The first paragraph cannot be read as having any purpose except to prevent the plat from being carved up into smaller lots. That purpose is reflected not only by the plain language of the restriction but also by correspondence sent from the Hunts Point Improvement Club in 1951 to the county commissioners indicating public concern with maintaining lot sizes large enough to preserve the country residential atmosphere. The hearing examiner did not err by finding that the plat restriction was imposed as a limit on residential density and that it achieves that limit by preventing subdivisions like the one Jones proposed.

### *The town has not abandoned the restriction by inconsistent application*

¶22  Throughout the proceedings, Jones has argued that the town engineer's present interpretation must be inaccurate because the town has previously approved changes to lot size that do not comply with the restriction. The town

engineer's letter to Jones on December 3, 2009, persuasively explained why the town's previous approvals of boundary line adjustments and lot consolidations were consistent with the plat restriction. Jones challenges the hearing examiner's conclusion that the restriction has not been abandoned.

¶23 The record contains evidence of lot changes affecting 13 of the original lots. Four lots in the northeast corner of the plat became three lots, four lots in the northwest corner became three lots, and five lots across the street from lot 11 became four lots. As noted by the town engineer, the result in each case was to create buildable lots larger in area than the original lots. Originally there were 38 separate lots in the plat; now there are 35. This was a decrease in density, not an increase. Further supporting the conclusion that the restriction was not abandoned, the deeds accomplishing the various lot changes within Hunts Point specifically state that the lots remain subject to the plat restriction.

¶24 As part of the changes affecting the four lots in block 2 in the northwest corner, the town accepted a deed of part of one of the lots in order to open a road. Also, the town permitted a road bordering block 2 on the north to be vacated and the resulting land to be absorbed by the northernmost lot in block 2. Jones claims these changes set a precedent for his proposed subdivision. We disagree. Opening the road did not increase the density of the plat. The leftover portion of the lot from which the road was carved out was consolidated with the neighboring lot. The town did not establish a precedent for a subdivision that creates two independent lots from one original lot. We conclude that the hearing examiner correctly rejected Jones' argument that the town had abandoned the restriction.

### Remand for acceptance of the application was not required

¶25 The hearing examiner concluded that the town engineer made a technical error in rejecting Jones' short plat

application; the town engineer should have accepted the application and then taken certain procedural steps outlined in the municipal code. However, the hearing examiner found the error to be of no moment under the circumstances because it was clear that the plat restriction would have ultimately required denial of the application in any event. Jones contends that in view of the procedural error, the examiner should have remanded the application for acceptance instead of going on to reach the substance of the dispute. There is no merit to this argument. The error was harmless. RCW 36.70C.130(1)(a).

### The town is entitled to attorney fees

¶26 The town is entitled to attorney fees under RCW 4.84.370. The statute authorizes an award of "reasonable attorneys' fees and costs" to the prevailing party or substantially prevailing party on appeal of a land use decision. RCW 4.84.370(1). A town whose decision is on appeal "is considered a prevailing party if its decision is upheld at superior court and on appeal." RCW 4.84.370(2).

¶27 The town contends its reasonable costs include fees incurred by the town's contract engineer and planner in proceedings up to and including the hearing before the hearing examiner. Jones has not disputed this contention, and we therefore direct that such fees, to the extent they are reasonable, be included in the award.

¶28 Affirmed.

APPELWICK and SPEARMAN, JJ., concur.

Reconsideration denied February 2, 2012.

Review denied at 174 Wn.2d 1016 (2012).