# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCHNITZER WEST, LLC, a Washington limited liability company, | No. 47900-1-II |
| Respondent, | |
| v. | |
| THE CITY OF PUYALLUP, a municipality of the State of Washington, | UNPUBLISHED OPINION |
| Appellant, | |
| and | |
| VIKING JV LLC, | |
| Additional Party, | |

MELNICK, P.J. — The City of Puyallup enacted an ordinance that rezoned property owned by Neil and Lore Van Lierop (Van Lierop Property). The rezone imposed new development restrictions. As a result, Schnitzer West, LLC, contract purchaser of the property, could not build a planned warehouse there. Schnitzer brought a Land Use Petition Act (LUPA)[1] petition in superior court alleging procedural and substantive defects in Puyallup's decision to apply the rezone to the Van Lierop Property. The superior court invalidated the ordinance on numerous grounds.

---

[1] Ch. 36.70C RCW.

We reversed the superior court because the rezone was not a "land use decision" subject to LUPA review. *Schnitzer W., LLC v. City of Puyallup*, 196 Wn. App. 434, 444, 382 P.3d 744 (2016). The Supreme Court reversed and held that the rezone was a "site-specific rezone" reviewable under LUPA. *Schnitzer W., LLC v. City of Puyallup*, 190 Wn.2d 568, 575, 416 P.3d 1172 (2018). It remanded the case to this court to decide the merits of Puyallup's appeal. *Schnitzer W.*, 190 Wn.2d at 570.

Since our 2016 decision, the Van Lierop Property has been sold to Viking LP after it passed through the hands of another business that is not a party to this case. Puyallup has moved to dismiss this case on grounds that both respondents, Schnitzer and Viking, lack "standing" under LUPA.

We conclude that Viking is a proper party because it is the owner of the property at the time of this appeal.[2] Because Puyallup violated its own procedural requirements for site-specific rezones, we affirm the superior court's decision invalidating the ordinance.

FACTS[3]

I.      BACKGROUND

In 2009, Puyallup created the Shaw-East Pioneer overlay zone (SPO), which established supplemental zoning standards for a specific area of Puyallup. *See* Puyallup Municipal Code (PMC) 20.46.000. Overlay zones establish additional development criteria to supplement the base

---

[2] Because Viking is a proper party, we decide the merits of the case regardless of whether Schnitzer is a proper party. The same lawyer represented both Schnitzer and Viking in this court and presented the same arguments on behalf of both.

[3] We take many of the facts below from the Supreme Court's opinion in *Schnitzer W., LLC v. City of Puyallup*, 190 Wn.2d 568, 416 P.3d 1172 (2018).

zoning standards already in existence in a given area. PMC 20.46.005. In 2009 the Van Lierop Property was not in Puyallup, but an unincorporated part of Pierce County near the SPO.

In 2012, when Puyallup annexed the Van Lierop Property, it was zoned for industrial/business park (MP) uses. Puyallup also annexed several nearby parcels zoned for commercial use. It did not extend the SPO onto any of the annexed property.

In 2013, Schnitzer entered into an agreement with the Van Lierops to purchase the property. It intended to develop a 470,000-square-foot warehouse. To build its warehouse, Schnitzer submitted a comprehensive plan amendment and rezone request to Puyallup to convert the zoning classification of part of the property from MP to light manufacturing (ML). The Puyallup City Council (council) approved this rezone.

Two months later, after a change in the membership of the council, it imposed a 120-day moratorium on all development in the newly annexed area, including the Van Lierop Property. Between the proposal for the moratorium and its enactment, Schnitzer submitted an application to construct a warehouse on the property.

II.    ORDINANCE 3067

When it enacted the moratorium, the council also referred the decision whether to expand the SPO onto recently annexed parcels, including the Van Lierop Property, to the City Planning Commission (commission). The council requested that the commission put "particular emphasis on the ML and CG [general commercial] zones." Clerk's Papers (CP) at 118.

The commission reviewed the request and reported to the council about the effects of the SPO onto ML, CG, and another zone in the area. The commission saw "little rationale" for applying the overlay "as-is" to the ML zone because "the current SPO [was] crafted to address commercial projects which are generally different from the larger-scale industrial uses and related

3

site features typically accommodated in the ML zone." CP at 126. It provided a list of potential modifications to make the overlay fit ML zoned property.

The commission held a public meeting and heard public comments both for and against expansion of the SPO. At the next council meeting, the commission recommended against applying the SPO to the area.

Despite the commission's recommendation, the council requested that the commission draft an ordinance applying the SPO to the Van Lierop Property, the only ML-zoned property in the area. The draft imposed a variety of new design standards and development regulations. Among other restrictions, it limited the footprint for any individual building on the property to 125,000 square feet, significantly smaller than Schnitzer's planned 470,000-square-foot warehouse.

At a council meeting, the Mayor stated, "I can't see this as anything but spot-zoning. If – if it's not, then I can't say where spot-zoning exists . . . I see no reason for us to add an overlay." CP at 647. Another council member stated he disliked spot-zoning and would rather look into area-wide changes than impose restrictions on a single property owner. Another council member voiced his concern that the changes were being pushed forward by four council members while three others were "left in the dark." CP at 642. The mayor and the two council members that opposed the changes were "stunned" and "totally unaware" of the draft ordinance and stated concerns that the other four members were acting as a "four-member council." CP at 647.

On May 28, the last day before expiration of the moratorium, four of the seven council members held a special meeting. The other three members questioned the urgency of the SPO expansion and why it could not wait for the next regularly scheduled council meeting.

Schnitzer sent a letter to the council that it requested be included in the meeting record. It summarized its view of the factual situation and provided the council with reasons it believed the rezone to be illegal. The Van Lierops also appeared at the special meeting and commented through their attorney, urging the council not to enact the expansion.

At the special meeting, the council members in attendance voted on the draft ordinance and enacted it as Ordinance 3067.

### III. LUPA PETITION AND APPEAL

Schnitzer challenged Ordinance 3067 in superior court by filing a land use petition under LUPA.[4] Schnitzer alleged that Puyallup enacted Ordinance 3067 under the guise of legislative rezoning while, in actuality, it constituted a "quasi-judicial, site-specific rezone" and a discriminatory example of spot-zoning. CP at 31.

The court concluded that Ordinance 3067 was an unlawful site-specific rezone and invalid as a matter of law. The court concluded that Puyallup had engaged in unlawful procedure or failed to follow prescribed process in violation of RCW 36.70C.130(1)(a), invalidating Ordinance 3067. It further concluded that Ordinance 3067 was a discriminatory spot zone and violated the appearance of fairness doctrine. Puyallup appealed to this court.

We heard Puyallup's appeal and reversed, concluding that Ordinance 3067 was not a land use decision and thus not reviewable under LUPA. *Schnitzer W.*, 196 Wn. App. at 444. The Supreme Court granted review and reversed in a plurality opinion. *Schnitzer W.*, 190 Wn.2d at 569-70. It held that Ordinance 3067 was a site-specific rezone that must be challenged under

---

[4] Schnitzer also filed a petition with the Central Puget Sound Growth Management Hearings Board, which was stayed pending resolution of this case.

LUPA and remanded for this court to resolve the merits of Puyallup's appeal. *Schnitzer W.*, 190 Wn.2d at 569-70, 575.

During the pendency of this appeal, the Van Lierop Property changed hands twice. First, Puyallup 5th Avenue LLC, an affiliate of Schnitzer, acquired the property from Van Lierop. After we heard oral argument but before we issued our opinion in 2016, Puyallup 5th Avenue transferred the property to Viking.

After we issued our previous opinion, Schnitzer filed a motion to substitute Viking for Van Lierop, because Van Lierop no longer had any interest in the property and Viking had become the owner. *See* RAP 3.2. Puyallup then moved to dismiss Schnitzer from the appeal, arguing it did not meet LUPA's standing requirements because it had never owned the property and was not prejudiced by any land use decision.

We granted the motion to substitute parties and denied Puyallup's motion to dismiss without prejudice in a single order. The Supreme Court then accepted Schnitzer's petition for review.

The Supreme Court reversed our decision, holding that Ordinance 3067 was a site-specific rezone under LUPA confined to a specific tract and impacting a sole owner. *Schnitzer W.*, 190 Wn.2d at 583. It remanded to this court for resolution of the merits of Puyallup's appeal. *Schnitzer W.*, 190 Wn.2d at 583. The Supreme Court reserved judgment on the standing issue, noting that Puyallup "may again raise the issue of standing on remand to the Court of Appeals." *Schnitzer W.*, 190 Wn.2d at 570 n.1. On remand, Puyallup filed a new motion to dismiss for lack of LUPA standing.

ANALYSIS

We have two primary issues to resolve. First, we decide if Schnitzer and Viking are the correct parties. Second, we look to the merits of the LUPA petition.

I.   LEGAL PRINCIPLES

A.   STATUTORY INTERPRETATION

In interpreting statutes, we "ascertain and carry out the legislature's intent." *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). We give effect to the plain meaning of the statute as "derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Jametsky*, 179 Wn.2d at 762 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

If a statute's meaning is plain on its face, we give effect to that meaning as an expression of legislative intent. *Blomstrom v. Tripp*, 189 Wn.2d 379, 390, 402 P.3d 831 (2017). However, if after considering the plain meaning, "the statute remains ambiguous or unclear, it is appropriate to resort to canons of construction and legislative history." *Blomstrom*, 189 Wn.2d at 390. If the statute "uses plain language and defines essential terms, the statute is not ambiguous." *Regence Blueshield v. Office of the Ins. Comm'r*, 131 Wn. App. 639, 646, 128 P.3d 640 (2006). "A statute is ambiguous if 'susceptible to two or more reasonable interpretations,' but 'a statute is not ambiguous merely because different interpretations are conceivable.'" *HomeStreet Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

B.   LUPA

Judicial review of land use decisions is governed by LUPA. *Lauer v. Pierce County*, 173 Wn.2d 242, 252, 267 P.3d 988 (2011). "LUPA authorizes the reversal of a local land use decision

7

if the party seeking relief carries the burden of establishing one of six statutorily enumerated standards." *Lauer*, 173 Wn.2d at 252 (citing RCW 36.70C.130(1)). The purpose of LUPA "is to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010.

When reviewing a LUPA decision, we "sit in the same position as the superior court" and "confine our consideration to the administrative record before the hearing examiner." *Lauer*, 173 Wn.2d at 253.

II.     PROPER PARTIES

Puyallup moved to dismiss this appeal on the grounds that neither Schnitzer nor Viking is the proper party to litigate this case.[5] It contends that Schnitzer has no remaining interest in the property and that Viking is a "nominal party" that has never submitted briefing or participated in oral argument.

We conclude that Viking is a proper party under the rules of appellate procedure. It is an owner of property affected by this opinion.[6] Because Viking's interest in the property is sufficient

---

[5] Puyallup couches its argument in terms of standing under LUPA. *See* RCW 36.70C.060. Although we are asked to decide standing, the RAPs talk in terms of aggrieved parties and substitution of parties. RAP 3.1, 3.2. We discuss this issue in terms of who the proper party is to litigate this appeal.

[6] We also note that Viking, as an owner of the property, has standing under LUPA in an administrative hearing. LUPA standing issues "are waived if not raised by timely motion noted to be heard at the initial hearing, unless the court allows discovery on such issues." RCW 36.70C.080(3).

to decide the merits of the appeal, we need not decide whether Schnitzer is a proper party.[7] We must decide the appeal regardless.

RAP 3.1 states that "[o]nly an aggrieved party may seek review by the appellate court." "'An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected.'" *Wash. Restaurant Ass'n v. Wash. State Liquor Control Bd.*, 200 Wn. App. 119, 134, 401 P.3d 428 (2017) (quoting *Aguirre v. AT&T Wireless Servs.*, 109 Wn. App. 80, 85, 33 P.3d 1110 (2001)). Further, a party on appeal "shall promptly move for substitution of parties" when it has "knowledge of the transfer of a party's interest in the subject matter of the review." RAP 3.2(b).

Puyallup contends that Viking is a "nominal party" that may not challenge Ordinance 3067 because it did not initiate a land use petition. It claims that Viking may not step into Schnitzer's role as "petitioner" and it may not exercise "substantive appeal rights that were never perfected by itself or any of its predecessors in title." Appellant's Reply re Mot. to Dismiss (Aug. 16, 2018) at 8-9. We disagree.

Originally, the Van Lierops entered into the case as the owners of the property at issue. They filed motions and fully participated as parties in the LUPA case before the superior court. While the case was on appeal, the Van Lierops transferred their interest to Puyallup 5th Avenue, which transferred it to Viking. We granted a motion to substitute Viking for the Van Lierops as a party.

Puyallup contends that "nothing in LUPA purports to empower these nominal parties [listed in RCW 36.70C.040(2)] to substantively challenge the underlying land use decision in their

___

[7] Viking and Schnitzer are represented by the same lawyer and have argued, analyzed, and advocated for the same result on every issue in this case.

own right, or otherwise excuses them from the requirement of timely filing their own land use petitions in that event." Appellant's Reply re Mot. to Dismiss (Aug. 16, 2018) at 8. None of the cases it cites provides authority for this argument. It also fails to cite to the RAPs on the issue. It would make little sense to require joinder of "parties" and deny them rights to make arguments and participate in the case. LUPA imposes no requirement that parties joined as landowners file their own separate land use petitions in order to participate in the case; it simply states that the listed persons "shall be parties to the review of the land use petition." RCW 36.70C.040(2).

Viking is an "aggrieved party" under RAP 3.1 because Ordinance 3067 negatively impacts the value of its property. We proceed to the merits of the LUPA challenge.

III.     SITE-SPECIFIC REZONE

Schnitzer contends that Puyallup violated its own procedures for site-specific rezones in adopting Ordinance 3067, that Ordinance 3067 is a discriminatory spot zone, and that Puyallup violated the appearance of fairness doctrine. Puyallup concedes that it followed improper procedure for a site-specific rezone, but contends any error was harmless. Because Ordinance 3067 was a site-specific rezone, Puyallup did not follow proper procedures and the error was not harmless. We do not reach Schnitzer's additional arguments.

In reviewing a LUPA appeal, we stand in the same position as the superior court. *Shaw v. Clallam County*, 176 Wn. App. 925, 931, 309 P.3d 1216 (2013). A party may obtain relief under LUPA by showing that "[t]he body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless." RCW 36.70C.130(1)(a). Whether this standard is met is a question of law we review de novo. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011).

Because the Supreme Court ruled that Ordinance 3067 constituted a "rezone application," Puyallup had to send the matter to the hearing examiner rather than resolving it through the legislative process for area-wide rezones.

A.     REZONE PROCEDURE

Rezone applications are within the jurisdiction of the Puyallup hearing examiner. PMC 2.54.070(5); PMC 20.10.015. Cases before the hearing examiner must include an open record public hearing with specific notice requirements. PMC 2.54.100. The hearing examiner must then render a decision within 10 business days and issue findings and conclusions which support its decision. PMC 2.54.110(1). If the hearing examiner approves a rezone, it amounts to a "final decision, subject to adoption of an ordinance by the city council" and the council "shall not conduct further review or conduct a hearing on the examiner's decision." PMC 2.54.120.

The city code specifies a list of required findings for the hearing examiner to make in order to grant a rezone. PMC 20.90.015. These findings include:

> (1) That the proposed [rezone] is consistent with the goals, objectives, and policies of the comprehensive plan;
> (2) That the proposed [rezone] is consistent with the scope and purpose of [the Puyallup Zoning Code] and the description and purpose of the zone classification applied for;
> (3) That there are changed conditions since the previous zoning became effective to warrant the proposed [rezone];
> (4) That the proposed [rezone] will be in the interest of furtherance of the public health, safety, comfort, convenience and general welfare, and will not adversely affect the surrounding neighborhood, nor be injurious to other properties in the vicinity in which the subject property is located.

PMC 20.90.015. Before the council may "approve an ordinance giving effect to a rezone approved by the hearing examiner, it must first receive the decision on such application from the hearing examiner" after a "duly noticed open record public hearing." PMC 20.90.025.

Because the Supreme Court has held that this case presents a rezone application made by the council itself, *Schnitzer W.*, 190 Wn.2d at 580, Puyallup was required to commence a hearing before the hearing examiner pursuant to chapter 2.54 PMC.

B.      HARMLESS ERROR

We grant relief under LUPA if "[t]he body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, *unless the error was harmless*." RCW 36.70C.130(1)(a) (emphasis added). We next review whether Puyallup's procedural error was harmless in this case and conclude it was not.

In *Jones v. Town of Hunts Point*, 166 Wn. App. 452, 462-63, 272 P.3d 853 (2011), a town engineer "made a technical error" in rejecting a plat application without taking certain procedural steps. Because restrictions on the land would have ultimately required the denial of the plat application even if the procedural steps had been taken, the court concluded that the error was harmless. *Jones*, 166 Wn. App. at 463.

In *Ellensburg Cement Prods., Inc. v. Kittitas County*, 179 Wn.2d 737, 751, 317 P.3d 1037 (2014), the local government provided a closed-record hearing instead of an open-record hearing as required by the State Environmental Policy Act (SEPA). This error was not harmless because one board member had expressed frustration with the inability to ask questions and another had responded that they needed to "move this along" immediately before the board voted to deny the SEPA appeal. *Ellensburg*, 179 Wn.2d at 752 n.3.

The procedural error in this case is far more substantial than in *Jones* or *Ellensburg*. In *Ellensburg*, error concerning whether a record was made of the proceedings was not harmless. In this case, the error concerned whether the overall nature of the proceedings themselves would be legislative or adjudicative.

Though the council held a public meeting with notice and took comments from the public, it is a legislative body and its proceedings were fundamentally legislative in nature. If Puyallup had pursued the proper process, the rezone application would have gone before the hearing examiner for an adjudication. PMC 2.54.120. The hearing examiner would have submitted findings of fact and conclusions of law regarding the required conditions for a rezone, pursuant to PMC 20.90.015. The council would then have lacked authority to further review the hearing examiner's decision. PMC 2.54.120.

Puyallup's failure to follow its own procedures resulted in a fundamentally different proceeding than that mandated by the PMC for site-specific rezones. This error was not harmless. We affirm the trial court's decision declaring Ordinance 3067 invalid as a matter of law.

CONCLUSION

Viking has LUPA standing and is a proper party before this court. We affirm the trial court's conclusion that Puyallup violated required procedures for a site-specific rezone and affirm the trial court's decision invalidating Ordinance 3067.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, P.J.

We concur:

_____
Sutton, J.

_____
Glasgow, J.

13