**FILED**
**AUGUST 5, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEPHEN CARTER and CHRISTY CARTER, husband and wife, | ) | No. 40485-4-III |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C&K CONTRACTING INC., a Washington for profit corporation, | ) | PUBLISHED OPINION |
| | ) | |
| Defendant, | ) | |
| | ) | |
| THE PATRICIA AND FRANK FITZPATRICK LIVING TRUST, a living trust, and DORIAN REID and ROBERT M. McCOOL, | ) | |
| | ) | |
| Appellants. | ) | |

LAWRENCE-BERREY, C.J. — The owners of two properties appeal the trial court's

order enforcing an easement on the eastern 12 feet of their properties in favor of their

No. 40485-4-III
*Carter v. C&K Contracting, Inc.*

neighbor to their east.  The order also requires the removal of roadway obstructions and awards the neighbor to the east their reasonable attorney fees and costs based on RCW 7.28.083, which permits an award of reasonable attorney fees and costs to the prevailing party in an action where a party claims an interest in real property by adverse possession.

We (1) affirm the trial court's declaration of the parties' easement rights, (2) affirm its order requiring removal of roadway obstructions, (3) affirm its award of reasonable attorney fees and costs based on RCW 7.28.083(3), but (4) deny the eastern neighbor's request (based on RAP 18.1(a)) for reasonable attorney fees on appeal.

FACTS[1]

The parties are owners of contiguous properties in Pierce County.  We provide a depiction of the properties to assist the reader:

---

[1] Our facts derive from the trial court's findings, which are not disputed by assignments of error.  The findings are therefore verities on appeal.  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).



*See* Clerk's Papers (CP) at 356.

As shown above, the western boundary of the property owned by Stephen Carter and Christy Carter borders the eastern boundary of the property owned by Dorian Reid/Robert McCool and the eastern boundary of the property owned by the Patricia and Frank Fitzpatrick Living Trust. The Reid/McCool property is directly north of the Fitzpatrick property. We refer to the owners of these two properties as "the western neighbors."

Three documents impact the boundary between the Carters' and the western neighbors' properties. The first document is a long plat created in early 1989 by Michael

and Shima Garrison, which created "Lot 1" and "Lot 2." The boundary between these

two lots is the same boundary between the Carter property (in Lot 1) and the western

neighbors' property (in Lot 2). Shortly after creating the long plat, the Garrisons sold

Lot 2 to Marshall Eaton and Margaret Eaton. The second document is a 1990 recorded

easement, created by the Garrisons and the Eatons, which granted an easement along

their shared boundary. The third document is the short plat of Lot 2, created later in 1990

by the Eatons.

The first document, the long plat, includes notes from the public works

department, including the following:

> 2.      Access to Lots 1 and 2, including their further subdivision, shall be
>         by way of one, and only one, private road easement with its entrance
>         as shown.[2]  Said entrance being constructed in accordance with
>         Pierce County approach control regulations.

> 3.      All lot ownerships shall include their adjoining portions of property
>         for the private road easement.  Said developer and/or adjoining
>         landowners and their successors shall bear the expense of
>         constructing and maintaining all private road easements for this
>         project.  Before dedication to Pierce County, the roads must meet
>         current standards of Pierce County.

Ex. 37A.

---

[2] The long plat depicts a 20-foot easement on each side of a portion of the Lot 1 and Lot 2 boundary.  As reflected in our depiction above, this easement affects most of the Reid/McCool boundary with the Carters but does not affect the Fitzpatrick boundary with the Carters.

4

The second document, the 1990 recorded easement, describes a "40.00 ft. Ingress, Egress and Utilities Easement lying 20.00 ft. on each side of [most of the property line that later would be shared by the Carters and the Reid/McCools and] 24.00 ft. Ingress, Egress and Utilities Easement lying 12.00 ft. on each side of [the property line that later would be shared by the Carters and the Fitzpatricks]." CP at 21. The 40-foot access and utilities easement is in the same location as the easement created in the long plat. So, the effect of the 1990 recorded easement was to create a 24-foot easement on the southern portion of the Reid/McCool and Carter boundary, extending south through the Fitzpatrick and Carter boundary.

The third document, the short plat, contains markings that show the 40-foot access and utilities easement, and the narrowed 24-foot access and utilities easement. In addition, the short plat includes notes from the public works department, including one that reads:

> 3.    All lot ownerships shall include their adjoining portions of property for the private road easement. Said developer and/or adjoining landowners and their successors shall bear the expense of constructing and maintaining all private road easements for this project. Before dedication to Pierce County, the roads must meet current standards of Pierce County.

Ex. 39A.

The short plat also includes notes from the fire marshal, including one that reads:

> 1.      Prior to occupancy of any buildings in this plat, the private roadway/driveway shall be constructed to comply with Pierce County Ordinance 84-90, Section 86.04.050(E) & (F).  The minimum cleared vehicular driveway or street width shall be (24) feet (for two-way roads) and (15) feet (for single family driveways) from shoulder to shoulder and shall be maintained.

Ex. 39A.

C&K Contracting, Inc. developed the properties later purchased by the western neighbors.  C&K submitted plans to Pierce County that honored the 40-foot access and utilities easement.  But in developing the properties, C&K obstructed the easement with landscaping and plants, which, in time, further obstructed the easement as the plants grew.[3]

After the western neighbors purchased their properties from C&K, the Carters sent them a letter saying that their properties were not in compliance with their easement obligations.  The western neighbors ignored the letter and even added obstructions.

The Carters sued C&K and the western neighbors.  The Carters' complaint sought to quiet title in the easement and a declaratory judgment of easement rights and obligations.  Specifically, the Carters sought "an order quieting title to the Easement, affirming Plaintiffs' rights in and to the Easement and requiring Defendants' removal at

---

[3] While C&K was developing these properties, the Carters advised the contractor that it was violating the easement by not providing room for the road.  C&K ignored this warning.

Defendants' expense of all encroachments interfering with Plaintiffs' beneficial use and enjoyment of the Easement." CP at 7.

In their answer, the western neighbors asserted (among other things) a cross claim against C&K that it was the party at fault, an affirmative defense against the Carters that their damages were caused by C&K, and a counterclaim against the Carters for adverse possession of the easement. C&K filed bankruptcy, and the parties dismissed their claims against C&K so the matter could proceed.

One year before trial, the western neighbors dismissed their adverse possession counterclaim against the Carters without prejudice. One month before trial, the western neighbors confirmed that their dismissal was without prejudice so they could revive their adverse possession counterclaims later.

The matter proceeded to a bench trial. The trial court construed the 1990 recorded easement and the plats, including the notes thereon, and granted relief consistent with the Carters' complaint. Specifically, the trial court directed the western neighbors to "immediately cease their obstruction and adverse possession" of the easement, to "pave the East 12 feet of their propert[ies] . . . with asphalt at their expense," and to remove "an[y] obstructions within this 12 feet which would interfere with the use of that 12 feet as a private road." CP at 981. In addition, citing RCW 7.28.083(3), the court awarded

7

the Carters their costs and reasonable attorney fees for prevailing against the western

neighbors' nascent adverse possession claims.

The western neighbors appealed to this court.

ANALYSIS

A.    PROPER DECLARATION OF EASEMENT RIGHTS

The western neighbors argue the trial court erred by construing the short plat as

amending the 1990 recorded easement. We disagree that the trial court erred.

"The extent of an easement, like any other conveyance of rights in real property,

is fixed by the language of the instrument granting the right. An easement must be

construed strictly in accordance with its terms in an effort to give effect to the intentions

of the parties." *Sanders v. City of Seattle*, 160 Wn.2d 198, 214-15, 156 P.3d 874 (2007)

(citations omitted). Similarly, "[i]n construing easements in a plat, the dedicator's intent

controls. We determine intent from the marks and lines on the plat itself." *Crystal Ridge*

*Homeowners Ass'n v. City of Bothell*, 182 Wn.2d 665, 671, 343 P.3d 746 (2015) (citation

omitted).

Here, the long plat requires the private easement road between Lot 1 and Lot 2 to

meet all Pierce County road requirements. Also, the 1990 recorded easement and the

later short plat are consistent. They both show the same location and widths of the access

and utilities easement—20 feet on each side of the future Carter-Reid/McCool centerline,

and 12 feet on each side of the future Carter-Fitzpatrick centerline.  The only difference is that the notes on the short plat require the full roadway to be at least 24 feet wide from shoulder to shoulder, and constructed in accordance with "Pierce County Ordinance 84-90, Section 86.04.050(E) & (F)."  Ex. 39A.

These notes reflect the intent of the Eatons, the western neighbors' predecessor-in-interest, of how the access road would be built.  The Eatons, by signing the short plat, impliedly, if not expressly, agreed to the conditions Pierce County imposed on approving the short plat subdivision.  There is no reason why the Eatons—parties to the 1990 recorded easement and dedicators of the later short plat—could not add more specific road standards in the later document.

B.  PROPER REMEDY ORDERED

1.  *Relief requested in pleadings*

The western neighbors, focusing on the Carters' quiet title and declaratory judgment causes of action, contend that those causes of action did not authorize the trial court to order removal of roadway obstructions.  We note that the western neighbors did not raise this issue below.  As such, we may refuse to review the issue.  RAP 2.5(a).  Nevertheless, we exercise our discretion and reach the merits of the newly raised issue.

At trial, the parties addressed the obstructions that would need to be removed from the easement, and the western neighbors addressed the burdens that removal would cause

them if the court ordered that remedy. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." CR 15(b). Thus, in addition to the remedy of removal being raised in the Carters' request for relief, the remedy ordered was tried with the consent of the parties. We conclude the trial court did not err by ordering a remedy outside of the pleadings.

### 2. *A party with a beneficial interest in an easement may enforce it*

Next, the western neighbors cite RCW 58.17.320 and argue the trial court erred by permitting the Carters to enforce the notes in the short plat. We disagree.

RCW 58.17.320 provides in relevant part:

> Whenever land within a subdivision granted final approval is used in a manner or for a purpose which violates . . . any term or condition of plat approval prescribed for the plat by the local government, then the prosecuting attorney, or the attorney general if the prosecuting attorney shall fail to act, *may* commence an action to restrain and enjoin such use and compel compliance with the provisions of . . . such terms or conditions.

(Emphasis added.) The word, "may," authorizes either official to bring an action to enforce the terms or conditions of a plat. Nothing in the statute supports an interpretation that *only* one or the other official can enforce the terms or conditions of a plat.

Here, the trial court concluded that the Carters had standing to enforce the terms and conditions of the plats because they had beneficial rights in the easement. We agree.

10

A person or entity with legal standing may enforce easement rights, including easement

rights created by the terms or conditions of a plat. *See Jones v. Town of Hunts Point*, 166

Wn. App. 452, 456-59, 272 P.3d 853 (2011) (holding that the town could enforce notes

recorded on the subdivision plat).

### 3.     Removal of obstructions within the road easement

Next, the western neighbors argue the trial court erred by ordering utilities

removed from a utility easement. We disagree that this is what the trial court ordered.

Rather, in conclusion of law 11, the trial court ordered removal of obstructions within

the 12-foot roadway "which would interfere with the use of that 12 feet as a private

road." CP at 981. Correctly understood, the trial court ordered removal only of

obstructions that would interfere with the use of the road.

Specifically, underground utilities—because they do not interfere with the use of

the private road—would not need to be relocated. But aboveground utilities would need

to be moved outside the easement.[4]

---

[4] The trial court ordered relocation of "any power vault or water main as necessary
to allow this East 12 Feet to be paved." CP at 981. The power and water companies are
not parties to this action. But one would expect them to honor their obligation to relocate
any fixture it placed aboveground within a recorded road easement, such as the one here.

####    4.    *Western neighbors to pay for removal of obstructions and widening of road*

Next, the western neighbors argue the trial court erred by dismissing their affirmative defense against the Carters—that C&K was at fault for the Carters' damages. The neighbors argue they were good faith purchasers when they purchased the properties from C&K, and it is unfair to burden them with the expense of bringing their properties into compliance with their easement obligations.  We disagree.

Both the large plat and the short plat expressly state that the "developer and/*or adjoining landowners* and their successors shall bear the expense of constructing and maintaining all private road easements for this project."  Public Works Note 3 on Ex. 37A and Ex. 39A.  (Emphasis added.)  The long plat, the 1990 recorded easement, and the short plat all were recorded, were disclosed to the western neighbors in their title reports, and support the relief ordered by the trial court.  Further, in a letter, the Carters brought the easement obligations to their neighbors' attention before commencing this action.  Not only did the neighbors ignore the Carters' letter, they added obstructions.

C.    PROPER AWARD OF COSTS AND ATTORNEY FEES AT TRIAL

Lastly, the western neighbors argue the trial court erred by awarding the Carters their costs and reasonable attorney fees based on the dismissed adverse possession counterclaims.

They first contend their adverse possession counterclaim was voluntarily dismissed *without* costs or attorney fees, and based on the order alone, the trial court erred. We disagree. A trial court retains authority to modify its orders until it enters a final judgment. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 37, 864 P.2d 921 (1993) ("A judge may reverse or modify a pretrial ruling at any time prior to the entry of final judgment."); *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 300, 840 P.2d 860 (1992) ("[A]n order which adjudicates fewer than all claims or the rights and liabilities of fewer than all parties is subject to revision at any time before entry of final judgment as to all claims and the rights and liabilities of all parties.").

They next contend the trial court erred by awarding costs and attorney fees under RCW 7.28.083(3), to the extent the award was based on the Carters' desire to protect against a future adverse possession claim. We disagree.

RCW 7.28.083(3) provides:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

In their third counterclaim, entitled "Quiet Title by Adverse Possession," the western neighbors asserted the elements of adverse possession and requested that "title [to] the easement area should be quieted against the Carters and in [their] favor."

13

CP at 42-43.  Their pleadings additionally requested an award of reasonable attorney fees

pursuant to RCW 7.28.083(3).

Here, the western neighbors were seeking to have the easement terminated and

title to the land quieted in their favor.  Thus, this litigation was an action asserting title to

real property by adverse possession.  Once the neighbors voluntarily dismissed their

adverse possession counterclaims, the Carters became the prevailing party and became

entitled to costs and reasonable attorney fees in accordance with the statute.  *See*

*Andersen v. Gold Seal Vineyards, Inc.*, 81 Wn.2d 863, 868, 505 P.2d 790 (1973)

(generally, a party's voluntary dismissal of a claim results in the other side being deemed

the prevailing party); *see also Hawk v. Branjes*, 97 Wn. App. 776, 781-83, 986 P.2d 841

(1999).  The close question on appeal is whether the trial court erred by awarding the

Carters some of their attorney fees *after* the western neighbors dismissed their adverse

possession counterclaims.

On one hand, once the western neighbors dismissed their adverse possession

counterclaims, the action no longer was an action asserting title to real property.  But on

the other hand, the western neighbors signaled their intent to pursue a claim of adverse

possession; so, if the Carters did not pursue this action to extinguish their neighbors'

adverse possession rights, the Carters soon might have lost their easement rights by

adverse possession.  It was for this reason the trial court remarked that the western

14

neighbors' adverse possession claims were "still with us up until my ruling today." Rep. of Proc. at 633.

We conclude, where a party asserts a continued right to title to real property by adverse possession, that party's dismissal of their adverse possession claim without prejudice does not render RCW 7.28.083(3) nonoperative. In other words, the action continues to be one in which a party asserts title to real property by adverse possession.

D.     DENIAL OF ATTORNEY FEES ON APPEAL

The Carters request attorney fees on appeal. For the reason explained below, we deny their request.

A party may request reasonable attorney fees on appeal if applicable law grants the party a right to recover their fees. RAP 18.1(a). A party requesting fees under RAP 18.1 must do so as provided in the rule.

In general, there are two briefing requirements for complying with RAP 18.1. First, the party must devote a section of their brief to their request for attorney fees. RAP 18.1(b). This, the Carters have done. Second, the party must argue and cite specific authority supporting their request for attorney fees. *State v. Richardson*, 177 Wn.2d 351, 366, 302 P.3d 156 (2013). This, the Carters have not done.

Here, the Carters argue, "RAP 18.1(a) specifically provides that [they] are entitled to appellate fees where the trial court awarded fees to them." Br. of Resp't at 56. This is

not so. The rule requires a party to request fees as provided by the rule, and the rule requires argument and citation to the specific authority that permits recovery of attorney fees. RAP 18.1(a) is not an independent basis for a party to recover attorney fees. *Lamb v. Lamb*, 33 Wn. App. 2d 609, 616, 563 P.3d 465 (2025). Because the Carters failed to argue and cite specific authority supporting their request for attorney fees, we deny their request.

Affirmed.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.

Cooney, J.

16